442 So.2d 1073 (1983)
The STATE of Florida, Appellant,
v.
Eunice Marie OLIVER, Appellee.
No. 83-827.
District Court of Appeal of Florida, Third District.
December 20, 1983.
*1074 Jim Smith, Atty. Gen. and Penny H. Brill, Asst. Atty. Gen., for appellant.
Michael Zelman, Miami, for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
FERGUSON, Judge.
The state appeals an order of the trial court which sets aside a seven year old conviction and grants a new trial on a Rule 3.850 post-trial motion alleging ineffective assistance of trial counsel.
Appellee and her "boyfriend" Drayton were convicted of manslaughter after a trial by jury.[1] The facts at trial were in pertinent part as follows. Appellee Oliver and the victim were involved in a street altercation instigated by the co-defendant, Drayton. Drayton held the arms of the deceased, pointed a gun at the deceased while arguing with her, then pushed her. Appellee then entered the fray. The evidence is conflicting, but one of the state's eyewitnesses testified that, simultaneous with the acts of Drayton, the appellee stabbed the deceased in the back with a knife. Another witness testified that appellee struck the deceased in the back with "balled fists" which gripped a shiny protruding object. A third witness stated that appellee was the only person who had a knife in her hands. The fight between appellee and the victim continued until the two were separated by the police. It was then discovered that the deceased had suffered a stab-like wound in the back which proved fatal. The police recovered from the scene a blood-stained knife with a shiny steel blade and black handle.
At trial, appellee and the co-defendant were represented by a single attorney, Marvin Emory. The defense theory relied upon by counsel, and rejected by the jury, was that the fatal wound resulted from an accidental puncture by broken glass as the victim and the appellee struggled on a trash pile.
Appellee's motion to vacate the judgment and sentence alleges a conflict of interest by trial counsel in the joint representation of both defendants. A paragraph and footnote at Page 5 of the motion and supporting memorandum sums up the theory:
This case presents perhaps the classic problem of joint representation. Counsel was hampered by tactical decisions which forced him to choose either a common defense or one which shifted blame from one of his clients to the other. It is of course impossible to speculate on which defense would have been stronger. The Defendant must be afforded a new trial because counsel's joint representation foreclosed any defense, no matter how strong, which implicated the Defendant and Co-defendant.[6]
[6] It is also unknown at this time whether counsel undertook any investigation which would support the defense that Drayton inflicted the fatal stab wound when he held the victim and struck her in the back. This issue will be fully developed at a future hearing on this motion when counsel's trial file is located.
The trial court's determination that a conflict of interest arose from defense counsel's joint representation of the appellee and Drayton in a single trial, rests on the following conclusions:
a. Mr. Emory was obligated to argue the `broken glass' theory solely because joint representation precluded all argument that the deceased was stabbed by someone other than the defendant.
b. The `broken glass' theory was inherently weaker than the defense that the deceased was stabbed with a knife by someone other than the defendant because there was uncontroverted physical evidence that the wound was inflicted by a knife-like implement.
c. There was evidence that Drayton had the motive and opportunity to have stabbed the deceased and there was no eyewitness testimony in the State's case to preclude the defense that Drayton was the perpetrator.

*1075 d. Mr. Emory's preoccupation with the `broken glass' theory resulted in his neglect to advocate that the testimony of Johnny Roundtree, the State's most credible eyewitness, was substantially discredited by his statement that the shiny object which the defendant had as she struck the deceased could have been jewelry on her wrist.
e. Mr. Emory's decision to call Drayton to testify on his own behalf, not predicated upon consultation with the defendant, resulted in devastating cross-examination revealing that in Drayton's pre-arrest statement to police he had declared that the defendant picked up the deceased and threw her into a pile of trash containing the broken glass.
f. Mr. Emory's strategy to defend Drayton by contrasting the police officers' assessment of his guilt with that of the defendant  demonstrated by the defendant's immediate arrest compared to the belated arrest of Drayton  was a decision adversely affecting his representation of the defendant.
The issue presented is whether there is any record support for the court's finding that trial counsel had an actual conflict of interest in representing both appellee and the co-defendant to the extent that his effectiveness in representing the appellee was materially compromised.
The starting point in the legal analysis is a recognition of the principle that representation by counsel of co-defendants in a single trial is not per se violative of constitutional guarantees. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Belton v. State, 217 So.2d 97 (Fla. 1968), cert. denied, 395 U.S. 915, 89 S.Ct. 1764, 23 L.Ed.2d 229 (1969); Washington v. State, 419 So.2d 1100 (Fla. 3d DCA 1982). An actual, not merely hypothetical or speculative conflict must be demonstrated before it can be said that an accused has been deprived of her sixth amendment right to effective assistance of counsel. United States v. Fox, 613 F.2d 99 (5th Cir.1980); United States v. Risi, 603 F.2d 1193 (5th Cir.1979).
The Florida Supreme Court in Webb v. State, 433 So.2d 496 (Fla. 1983) recently adopted the definition of conflict of interest as set forth in Foxworth v. Wainwright, 516 F.2d 1072 (5th Cir.1975):
A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing. 516 F.2d at 1076.
The Foxworth test for conflict is not an abstract one, but calls for an examination of the evidence presented at trial or at the hearing on the motion to vacate the judgment. Thus, appellee's claim of actual conflict will succeed only if the record affirmatively indicates that, due to the joint representation, the co-defendant gained significantly at her expense, and that appellee was damaged by the common defense.
Appellee, in her motion to the trial court, theorized that Drayton could have inflicted the fatal wound, and suggests that that would have been a better defense. At the hearing on the motion, however, she adhered to the testimony which she had given at trial in support of the common defense "broken glass" theory, and produced no evidence to show that the victim could have been stabbed by Drayton or any third person. Further, no evidence was presented to show that the substance and effect of the state's proof, which pointed convincingly to the defendant as the person inflicting the injury, would have been changed by a defense antagonistic to the co-defendant. The evidence adduced at trial shows that Drayton either held the arm of the deceased, or pushed her into the fight with appellee, or both. These facts do not support the hypothesis that the victim was stabbed by Drayton rather than by the appellee.
Drayton's trial testimony on cross-examination that appellee "threw" the victim, or *1076 that they both fell on the trash pile in the course of the struggle, was consistent with the common defense and did not significantly promote Drayton's defense to the detriment of appellee's. Nor is there a showing that counsel's arguments regarding Drayton's arrest subsequent to the arrest of the appellee, alone, or in combination with other facts of record, compelled counsel to abandon the "united front." The immediate arrest of appellee at the scene was the result of what the officers witnessed when they arrived on the scene; the investigation which followed led to the arrest of Drayton. The later arrest of Drayton, in addition to being another unalterable fact, may have made Drayton appear a little less guilty, but added nothing to the state's case against appellee.
What was said by this court in Washington v. State is apposite here:
The claims of conflict here are based entirely on appellate counsel's theories  developed with the benefit of the entire record  on what [the] defendant's most effective response to the government's evidence would have been. If actual conflict can be established on this basis, it will be a rare case in which an untested strategy will not look better than an unsuccessful one. 419 So.2d at 1102 (quoting United States v. Benavidez, 664 F.2d 1255, 1260-61 (5th Cir.1982), cert. denied, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1352 (1982)).
Appellee did not demonstrate an actual conflict because she failed to show that the co-defendant Drayton gained significantly at her expense, and that she was damaged by the common defense. To the contrary, in light of all the evidence, it would appear that Drayton, more so than appellee, might have benefitted if the common defense had been abandoned.
Reversed and remanded with instructions to reinstate the conviction and sentence.
NOTES
[1] This court affirmed the conviction. Oliver v. State, 345 So.2d 438 (Fla. 3d DCA 1977).