**Eunice Marie OLIVER, Petitioner,**

v.

**Louie L. WAINWRIGHT, as Secretary, Department of Corrections, Defendant.**

No. 84–0425–CIV–EPS.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 14, 1984.

Rory S. Stein, Asst. Public Defender, Miami, Fla., for petitioner.

Richard Polin, Asst. Atty. Gen., Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

SPELLMAN, District Judge.

The sole issue presented for review in this habeas corpus case is whether Petitioner was denied effective assistance of counsel. Petitioner's attorney, retained to represent both her and a co-defendant on a murder charge, allegedly labored under an actual conflict of interest. Magistrate Sorrentino concluded that Petitioner was not denied effective assistance of counsel and recommended that the petition be dismissed. This Court cannot agree.

### I

Petitioner, Eunice Marie Oliver, along with her "boyfriend" and co-defendant Christopher Drayton, was convicted of manslaughter after a trial by jury.[1] The state's case was based upon the testimony of eight witnesses: three eyewitnesses, three investigating police officers, a serologist and a medical examiner. The medical examiner testified that the death of the deceased, Carolyn Cooper, was caused by a single stab wound to the back. The wound was consistent with that caused by a knife. Although a knife stained with human blood was found at the scene, the state was unable to establish that Oliver had ever held it. Moreover, the state was unable to establish that the blood on the knife was that of the deceased.

Underlying the incident which gave rise to the stabbing, was an earlier altercation at a bar. This fight was predicated upon an alleged attempt by the deceased and her sister, Bessie Cooper, to rob a friend of Drayton named Spider. Oliver and Drayton were not at the bar during this first altercation but arrived together an hour later after another Drayton friend, Nices Johnson, called and told Drayton of the robbery attempt. It was night time.

Drayton believed that the deceased and her sister, Bessie, were involved in the robbery attempt and upon arriving at the bar, told both women that the intended robbery victim was "a friend of mine and I ain't going to let [you] jump on him nor Nices for trying to protect him." Oliver stood nearby and said nothing. From this point on, however, because of the divergence of eyewitness opinion, it is impossible to offer a single account of the events leading to the stabbing.

Ernest Milton, the deceased's brother, claimed that Oliver approached the deceased while holding a knife in her left hand and struck the deceased several times in the face with her right hand. According to Milton, Drayton had a gun and held the deceased as Oliver stabbed her with her left hand. Milton subsequently contradicted himself by first demonstrating Oliver's actions by stabbing with his right hand and then by stating that Oliver approached with the knife in her right hand and shifted it to her left hand just before the stabbing. In closing argument, the prosecutor con-

---

1. In an information filed in the Circuit Court for the Eleventh Judicial Circuit of Florida, in and for Dade County, Oliver and Drayton were charged with the second degree murder of Carolyn Cooper.

ceded that Milton's testimony could be ignored.

Bessie Cooper, the deceased's sister, testified that she and the deceased were on their way home when they were confronted by Drayton, who pointed a gun at them and threatened to kill them. Cooper stated that Oliver and the deceased began to argue and that Oliver stabbed the deceased in the back while Drayton held the deceased's wrists. Throughout the struggle between the deceased and Oliver, Cooper stated that she never saw either girl fall to the ground.

On cross-examination, Cooper was impeached with her testimony at the preliminary hearing where she testified that "I didn't see Eunice Oliver stab my sister, but Eunice Oliver was the only one upon my sister, her and Chris, Chris was holding her hands."

Johnny Roundtree, a friend of the deceased, stated that Drayton began arguing and pointing a gun at the deceased, Bessie Cooper and himself as they left the bar. After Drayton pushed the deceased, he encouraged Oliver to strike her. Roundtree said he observed Oliver strike the deceased with a "balled fist" and a shiny object which, he volunteered, could have been jewelry on her wrist. Although he saw the complete struggle, Roundtree claimed that neither Oliver nor the deceased fell to the ground.

The testimony of the eyewitnesses was supplemented by the testimony of three police officers, one of whom, Officer McMahon, placed Drayton right next to the deceased as the deceased struggled with Oliver. A trash pile with broken glass was observed where the struggle had occurred.

To disarm the prosecution's case against Oliver, counsel Marvin Emory [2] embarked upon a defense in which Oliver was to concede that she had struggled with the deceased, but assert that the fatal wound was inflicted when the deceased fell on the glass. Regarding Drayton, Emory argued that Drayton was less culpable than Oliver, because, unlike Oliver, Drayton was not arrested at the scene. [3]

Emory first attempted to establish the common defense by developing testimony through cross examination that there was a trash pile with glass. In addition, defense counsel called two witnesses, Renee Thomas and Thelma Miller, who both testified that the deceased first struck Oliver and that during the ensuing struggle, both women fell on the trash pile. Both witnesses agreed that Oliver did not have a knife and that Drayton did not have a gun. Both witnesses also agreed that Drayton did not go near the deceased.

Defense counsel also presented the testimony of Drayton and Oliver. Drayton testified that he confronted the deceased and her sister, Bessie, after learning from Spider that Spider's tires had been slashed. Drayton told the deceased and her sister that he would protect his friends from their threats. Drayton stated that the deceased removed an object from her purse and struck Oliver. Oliver then grabbed the deceased and the two women fell onto the trash pile as they struggled. Drayton denied that he ever touched or even approached the deceased during the altercation.

On cross examination, Drayton's description of the incident was impeached through

**2.** Throughout pre-trial and trial proceedings, both Oliver and Drayton were represented by attorney Marvin Emory. It was Drayton who retained Emory in this matter because he knew Emory personally and had been represented by Emory in other criminal matters. Oliver never met with Emory without Drayton also being present. Marvin Emory is now deceased.

**3.** At no time prior to trial did counsel Emory discuss with Oliver the existence of a possible conflict of interest in his representation of both Oliver and Drayton. Emory never explained to

Oliver that she could retain another attorney. Nor did Emory ever mention the possibility of having separate trials for Oliver and Drayton. Emory also never discussed with Oliver the possibility of claiming, as a defense to the crime charged, that Drayton was responsible for the victim's death.

In addition, there is no indication that the trial judge ever voir dired Oliver regarding the conflict of interest. Thus, the record reflects that Oliver never waived the conflict of interest.

use of his prior statement to the police that "Eunice picked her [the deceased] up and threw her in the pile of stuff." Drayton subsequently explained that he didn't intend his statement to the police to be taken literally.

Oliver described how the deceased had "plunged" toward her with an object she had removed from her purse. Oliver stated that she caught the deceased's arm and struggled with her, and that during the struggle she tripped and fell on the trash pile. Oliver denied that she ever had a knife or had stabbed the deceased.

In closing argument, the prosecutor argued that the evidence was inconsistent with the claim that the deceased was fatally wounded by falling on glass. The prosecutor maintained that Roundtree was truthful when he testified that Oliver stabbed the deceased in the back with a "balled fist" and "something in her hand."

Defense counsel was so preoccupied with the "broken glass" theory, however, that he neglected to advocate that Johnny Roundtree's testimony, the state's most credible eyewitness, was substantially discredited by Roundtree's observation that the "shiny object" could have been jewelry on Oliver's wrist. Instead, Emory maintained that the "crucial issue" in the case was the correctness of the medical examiner's opinion that the deceased was stabbed with a knife. Emory argued that this issue should be resolved to be "consistent with what Eunice said that they fell on this garbage." The jury disagreed and found Oliver guilty of manslaughter. She was later sentenced to ten years imprisonment.

On appeal, the District Court of Appeal of Florida, Third District, affirmed Oliver's conviction and sentence without opinion. *Oliver v. State*, 345 So.2d 438 (Fla. 3d DCA 1977).

On October 8, 1982, Oliver filed a motion to vacate her conviction and sentence pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. In her motion, Oliver for the first time alleged that she had received ineffective assistance of trial counsel by virtue of Marvin Emory's conflict of interest in representing both Oliver and Drayton. Following an evidentiary hearing on Oliver's motion, the Circuit Court entered an order vacating Oliver's conviction and sentence.

The State of Florida appealed the order of the Circuit Court to the Third District Court of Appeal. On December 20, 1983, the court issued an opinion reversing the order of the Circuit Court and reinstating Oliver's conviction and sentence. *State v. Oliver*, 442 So.2d 1073 (Fla. 3d DCA 1983). Oliver's motion for rehearing was denied on February 14, 1984.

On January 27, 1984, the Circuit Court ordered that Oliver surrender on February 28, 1984 to begin service of her sentence. Having exhausted her state remedies, Oliver sought habeas corpus relief in this Court on February 16, 1984. In her petition, Oliver claimed that she was denied effective assistance of counsel, guaranteed by the sixth and fourteenth amendments to the United States Constitution, due to Emory's representation of both her and a jointly-charged and tried co-defendant. This Court agrees.[4]

## II

A state prisoner can win a federal writ of habeas corpus only upon a showing that the state participated in the denial of a fundamental right protected by the fourteenth amendment. The right to counsel, guaranteed by the sixth and fourteenth amendments to the United States Constitution, is a fundamental right. *See Argersinger v. Hamlin*, 407 U.S. 25, 29–33, 92 S.Ct. 2006, 2008–2010, 32 L.Ed.2d 530 (1972). This right to counsel prevents the states from conducting trials at which persons who face incarceration are forced to defend themselves without "reasonably ef-

---

4. At an evidentiary hearing before United States Magistrate Charlene H. Sorrentino, the parties agreed that their arguments were complete within the record. On February 22, 1984, Magistrate Sorrentino recommended that Oliver had failed to demonstrate that her attorney labored under an actual conflict of interest.

fective assistance of counsel." *Westbrook v. Zant*, 704 F.2d 1487, 1498 (11th Cir. 1983). *See also Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

▌ Although a conflict of interest may cause counsel's representation to fall below this sixth amendment standard, not all conflicts are so egregious as to constitute a sixth amendment violation. *See United States v. Freeman*, 619 F.2d 1112 (5th Cir.1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). In *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981), the fifth circuit summarized the nature of a reversible violation:

> For a conflict of interest to cause representation to fail Sixth Amendment standards, this Circuit requires that the conflict be actual, not speculative. An actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing.

*Id.* at 395. Once an actual conflict of interest is found, however, it is, without further inquiry, presumed prejudicial to the defendant. "It is well established that when counsel is confronted with an actual conflict of interest, prejudice must be presumed, and except under the most extraordinary circumstances, the error cannot be considered harmless." *Turnquest v. Wainwright*, 651 F.2d 331, 334 (5th Cir. 1981).

▌ Under this standard, it is clear that counsel Emory labored under an actual conflict of interest in his dual representation of Oliver and Drayton. Undoubtedly compelled by the need to construct a defense that was consistent with Drayton's pretrial statement to the police, defense counsel presented as a common defense the theory suggested by Drayton; namely,

that the deceased had been inadvertently injured by a piece of glass during the deceased's struggle with Oliver on a pile of trash. The common defense was not at all dependent on Oliver's testimony.[5] Instead, to buttress the common defense, Emory called Drayton, who denied that he had ever touched or approached the deceased, and Renee Thomas and Thelma Miller, who corroborated these aspects of Drayton's story. On these facts, the common defense accomplished nothing more than to bind Oliver's culpability to the credibility of Drayton and his testimonial supporters.

The difficulty with the common defense was that it was inconsistent with the opinion of the medical examiner and the physical evidence found on the scene. It also had the effect of pointing to Oliver as the perpetrator.

The medical examiner testified that the death of Carolyn Cooper was caused by a single stab wound to the back; the wound was consistent with that caused by a knife. A knife stained with human blood was found at the scene. On these facts, the jury could reasonably conclude that Carolyn Cooper's death was caused by a knife/stab wound inflicted by one person and not by a fall on broken glass.

The person who inflicted the wound was suggested by the testimony of Drayton, Thomas and Miller. Since these witnesses uniformly claimed that Drayton never touched or approached the deceased, the jury's attention was shifted to Oliver—the only other person who had the opportunity to inflict the fatal wound and perhaps, more importantly, the only other person charged with the crime.

Oliver's "apparent" culpability was strengthened by both Drayton and defense counsel: first, when Drayton was impeached on cross examination with his earlier statement that "Eunice picked her [the deceased] up and threw her in the pile of

---

5. Oliver merely testified that she did not have a knife and that she struggled and fell with the deceased after the deceased had attacked her. Oliver did not know Drayton's whereabouts during the struggle. She stated, at an evidentiary hearing before Circuit Judge Richard Feder on February 28, 1983, that "if Chris Drayton stabbed Carolyn Cooper with a knife, [I] couldn't have seen it and ... couldn't have told Mr. Emory."

stuff," thereby depicting Oliver as the aggressor; and secondly, when defense counsel repeatedly sought to portray Drayton as less culpable than Oliver by pointing out that only Oliver was arrested at the scene.

It is clear on this record that Oliver was severely prejudiced by defense counsel's efforts to demonstrate that Drayton was not responsible for the death of the deceased. In addition, defense counsel's dual representation of Oliver and Drayton caused counsel to refrain from presenting an inherently more believable defense for Oliver. This defense was not inconsistent with the opinion of the medical examiner, the physical evidence found on the scene, and the eyewitness account of the incident. The defense, suggested by a reasonable view of the evidence, was that Drayton was the person who inflicted the single stab wound.

It is certainly apparent that Drayton had a motive to kill Carolyn Cooper. Drayton initially came to the scene because he had been told that the deceased and Bessie Cooper had planned to rob Drayton's friend, Spider. Subsequently, when the deceased, Bessie Cooper and Johnny Roundtree left the bar, Drayton confronted them and pointed a gun at them.

The evidence also establishes that Drayton had the opportunity to inflict the fatal wound. The state's three eyewitnesses, Ernest Milton, Bessie Cooper and Johnny Roundtree, each testified that Drayton had been present and had physically accosted the deceased during her struggle with Oliver. In addition, Officer McMahon stated that upon his arrival on the scene, he observed Drayton standing next to the deceased, who was still on the trash pile with Oliver.

In light of the weak and inconclusive testimony of the state's eyewitnesses and the evidence demonstrating Drayton's motive and opportunity to kill the deceased, defense counsel was clearly presented with the opportunity to raise the plausible defense that Drayton had killed the deceased. The sixth and fourteenth amendments guaranteed to Oliver the right to have her counsel choose between that defense and the common defense presented, unfettered by conflicting interests. However, because of defense counsel's concurrent representation of Oliver and Drayton, he was not able to freely make that choice of strategy. His inability to freely choose to present the plausible defense aimed at inculpating Drayton deprived Oliver of her sixth and fourteenth amendment right to effective assistance of counsel.

*Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir.1975), illustrates the conflict of interest in this case. In *Foxworth*, four boys were charged with murdering Earl Wilson. Three of the four boys, Foxworth, Bevels and Farmer, were represented by one attorney. At trial, the prosecution's theory was that the four boys choked Wilson by holding him down and pressing a stick against his throat. The medical examiner found that Wilson's death was caused by blows to the head with a blunt instrument. Although Bevels had been seen earlier on the day of Wilson's death striking Wilson with a stick, defense counsel contended, as his theory of defense, that four other boys had killed Earl Wilson.

The fifth circuit reversed Foxworth's conviction, holding that he had received ineffective assistance of counsel. The court found that Foxworth's counsel labored under an actual conflict of interest due to his inability to raise as a defense the possibility that Bevels was the perpetrator. The court noted:

The State's analysis fails to appreciate that the conflict occurred not in presenting the defense chosen by appointed counsel, but in selecting defenses and strategies in the first place. We are at a loss to see how a defense inculpating Bevels could have been tendered except by the active efforts of the appointed counsel; yet, as the State admits, such efforts would have grievously prejudiced Bevels' defense. Under these circumstances, counsel's choice of the "united we stand, divided we fall" defense was not a free choice of strategy. It was the only course open to an attorney with the

unenviable task of saving three boys from the electric chair.

*Foxworth,* 516 F.2d at 1079–80 (footnotes omitted).

As in *Foxworth,* Oliver was entitled to an attorney who could decide whether or not to raise a plausible defense suggested by the evidence, unaffected by his representation of a second client in the same case. The conflict of interest inherent in Marvin Emory's inability to defend Oliver by inculpating Drayton, rendered Emory ineffective and deprived Oliver of her sixth amendment right to counsel. Oliver is entitled to habeas corpus relief.

This Court fully appreciates the gravity of nullifying a conviction of this vintage.[6] In this case, however, the applicable principles of law are clear and well established, and the evidence of an actual conflict of interest is substantial. The petition for writ of habeas corpus is therefore granted and Petitioner must be discharged unless the state elects to retry her within 120 days from the date of this Memorandum Opinion and Order.

---

**6.** Oliver was convicted of manslaughter nearly nine years ago, on January 9, 1976.