**Eunice Marie OLIVER,
Petitioner-Appellee,**

**v.**

**Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida, Respondent-Appellant.**

**No. 84–5913.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1986.

Richard L. Polin, Atty. Gen., Miami, Fla., for respondent-appellant.

Rory S. Stein, Asst. Public Defender, Miami, Fla., for petitioner-appellee.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN *, Senior District Judge.

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Bessie Cooper, the deceased's sister, testified that she recovered a second knife at the scene. However, Officers Long and McMahon, the po-

## PER CURIAM:

The only issue presented on appeal is whether Eunice Marie Oliver was denied effective assistance of counsel because of a conflict of interest that arose due to counsel's joint representation of Oliver and her co-defendant, Christopher Drayton. The district court found evidence of an actual conflict of interest and granted habeas corpus relief. We reverse.

Oliver and her boyfriend Drayton were charged with the second degree murder of Carolyn Cooper. Cooper's death was caused by a single stab wound in the back. The fatal wound was inflicted in the early morning hours of November 9, 1974 outside the Soul Room bar in Miami, Florida. Eyewitness accounts of the events leading to the stabbing were varied and often contradictory. At least one blood stained knife was recovered at the scene.[1] A serologist determined that the blood on the knife was human blood; however, he was unable to determine whether the blood type on the knife matched the deceased's blood type. Moreover, any fingerprint evidence that might have been obtained from the knife was destroyed by the police's handling of the knife when it was recovered.

Attorney Marvin Emory was retained to represent both Oliver and Drayton at trial. The defense's theory was that the deceased was fatally wounded by broken glass while she struggled with Oliver on a pile of trash. To support this theory, the defense introduced two eyewitnesses who testified that Oliver and Cooper struggled, tripped and then fell onto a pile of trash. Both witnesses also testified that Drayton took no part in the struggle and that he was, in fact, some distance from the two women as they fought. Thereafter, Oliver and Drayton each took the stand on their own behalf and gave essentially the same version of

lice officers called to the scene, testified that only one knife was found. Moreover, Detective Spiegel, the homicide investigator assigned to the case, testified that he had no personal knowledge of the existence of a second knife.

the facts.[2] With respect to Drayton's whereabouts, Oliver testified that he was standing behind her and talking to the deceased before the struggle. She did not testify, however, as to Drayton's whereabouts during the struggle.[3]

The prosecution, on the other hand, attempted to prove that Oliver stabbed Cooper while Drayton held her. Ernest Milton and Bessie Cooper, the victim's brother and sister, both testified that Oliver stabbed the deceased in the back with a knife while Drayton held her. On cross-examination, however, both witnesses were substantially discredited.[4] A third witness, Johnny Roundtree, testified that he saw Oliver hit the deceased in the back with a balled fist. He also stated that he saw "something shiny" in Oliver's hand, but on cross-examination he conceded that the "something shiny" could have been jewelry.

The medical evidence given by Dr. Ronald Wright, the medical examiner who performed the autopsy on the deceased, was that Cooper's death was caused by a single stab wound in the back. Based upon his examination of the wound, Dr. Wright believed that the object which caused the wound was smaller at the tip than it was at the base. He concluded that the wound was consistent with that caused by a knife. On cross-examination, Dr. Wright testified that it was possible, though not probable, that the wound was caused by a piece of glass which was pointed, sharp and flat. He also stated that the wound could have been caused by a fall on a knife, but only if the knife was supported at a ninety degree angle to the object falling on it.

The jury found both defendants guilty of manslaughter. The trial court sentenced Oliver to ten years in the state penitentiary.[5] On appeal, the conviction and sentence were affirmed without opinion. *Oliver v. State*, 345 So.2d 438 (Fla.Dist.Ct. App.1977). Oliver's petition for certiorari to the Supreme Court of Florida was denied. *Oliver v. State*, 352 So.2d 173 (Fla. 1977).

On October 8, 1982, Oliver, with new counsel, filed a motion to vacate the conviction and sentence, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.[6] In this motion, Oliver alleged that she received ineffective assistance of counsel because of a conflict of interest that arose due to trial counsel's joint representation of Oliver and Drayton. Following an evidentiary hearing, the trial court entered a written order vacating the conviction and sentence upon finding that there was a conflict of interest. The Third District Court of Appeal reversed the order of the trial court and reinstated the conviction and sentence. *State v. Oliver*, 442 So.2d 1073, 1076 (Fla.Dist.Ct.App.1983).

Having exhausted her state remedies, Oliver filed a petition for federal habeas corpus relief on February 16, 1984 on the ground of ineffective assistance of counsel due to a conflict of interest. In her petition, Oliver alleged that attorney Emory presented the "broken glass" common de-

**2.** Drayton's testimony was impeached on cross-examination to the extent that in an earlier statement to the police, he suggested that Oliver attempted to "throw" the victim before they both fell to the ground.

**3.** At a subsequent evidentiary hearing on February 28, 1983 Oliver testified that she did not see Drayton during the struggle and that even if Drayton did stab the deceased, she could not have seen it.

**4.** On cross examination, Milton contradicted himself by recounting a different version of how Oliver stabbed the deceased. In closing argument, the prosecutor suggested that the jury discount Milton's testimony. Cooper's testimony was impeached with her preliminary hearing testimony in which she admitted that she "didn't

see Eunice Oliver stab [her] sister, but Eunice Oliver was the only one upon [her] sister, her and Chris [and] Chris was holding her hands." Cooper then stated that she testified that Oliver stabbed her sister because she saw Oliver with a knife in her hand.

**5.** The trial court released Oliver into her father's custody pending appeal. Oliver was never told by her appellate counsel that her appeal was denied. Moreover, she was not notified that she was to begin serving her sentence until August 6, 1982.

**6.** It should be noted that attorney Emory died before the motion to vacate was filed.

fense because he was compelled to construct a defense that was consistent with Drayton's statements to the police at the scene. Oliver also argued that the joint representation caused attorney Emory to refrain from presenting the "more credible defense" that Drayton had been the one to inflict the single stab wound. Following an evidentiary hearing, the magistrate recommended that Oliver's petition be denied. The district court disagreed and granted relief, finding "substantial" evidence of an actual conflict of interest. *Oliver v. Wainwright*, 599 F.Supp. 1148, 1154 (S.D.Fla. 1984).

Initially, we must consider the proper scope of review. Relying on the Supreme Court's holding in *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980),[7] this court's predecessor has held that questions involving conflicts of interest are mixed determinations of law and fact not entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1982). *Baty v. Balkcom*, 661 F.2d 391, 394 n. 5 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).[8] *See also Goodwin v. Balkcom*, 684 F.2d 794, 803 (11th Cir. 1982) (citations omitted) ("whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact"), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983).

■ The state, on the other hand, argues that the findings of the highest state court to review this issue are entitled to a presumption of validity under § 2254(d). The state suggests that *Cuyler v. Sullivan* is inapplicable in the context of this case because we are presented with a strictly factual question, namely, whether there was any evidence in the record to support

the theory that Drayton stabbed the victim. The state's characterization of the ultimate issue in this case is misguided. We agree with the state that purely factual findings such as what counsel did to prepare for trial or how he presented the defense at trial are entitled to a presumption of validity. These facts are a part of the record and are not in dispute. The ultimate issue, however, is whether these facts support the conclusion that an actual conflict of interest existed. This is a mixed question of law and fact to which we will apply our own judgment. *See Baty v. Balkcom*, 661 F.2d at 395 n. 7. Therefore, we must review the entire record de novo in order to determine whether Oliver was denied effective assistance of counsel at trial.

■ Joint representation of co-defendants is not a *per se* violation of the sixth amendment right to effective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). In order to establish a sixth amendment violation, a defendant who failed to object to the joint representation at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718 (footnote omitted).

■ An actual conflict of interest exists whenever "counsel's introduction of probative evidence or *plausible* arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Baty v. Balkcom*, 661 F.2d at 395 (citations omitted) (emphasis added). To demonstrate an actual conflict, defendants must be able to point to " 'specific instances *in the record* to suggest an actu-

---

7. In *Cuyler v. Sullivan,* the Supreme Court was asked to decide whether two attorneys had undertaken multiple representation of co-defendants resulting in an impermissible conflict of interest. In discussing the proper standard of review to be applied, the Court stated that findings concerning the roles that the two attorneys played in the defense of the three co-defendants are factual findings. 446 U.S. at 342, 100 S.Ct. at 1714. However, a holding that the lawyers

who played these roles did not engage in multiple representation is a mixed question of law and fact. *Id.*

8. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982) we adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

al conflict or impairment of their interests.'" *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.) (citation omitted) (emphasis added), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). A conflict which is merely hypothetical does not warrant reversal. *Id.* at 1331. Thus, an alleged conflict of interest is not significant unless the alternative defense or strategy suggested is plausible. *Foxworth v. Wainwright*, 516 F.2d 1072, 1080 (5th Cir. 1975) (citation omitted).[9]

■ In her motion for habeas relief, Oliver alleges that attorney Emory, by virtue of his joint representation, was precluded from adopting a shifting blame strategy and arguing that Drayton inflicted the fatal wound. She suggests that this alternative theory was more plausible than the broken glass theory which was presented at trial.[10] Since filing her motion, however, Oliver has produced no evidence to show that the deceased was stabbed by Drayton. Indeed, at an evidentiary hearing before the magistrate, held on February 22, 1984, counsel for both sides agreed that their arguments were complete on the existing record.

At trial, the witnesses testified that Drayton either held the deceased by her arm, or instigated the fight between Oliver and the deceased, or both. These facts alone do not support the theory that Drayton stabbed the deceased. Moreover, although three witnesses testified that Drayton had a gun, not one witness saw Drayton holding a knife that night. Finally, although admittedly Drayton may have had a motive to kill Cooper, we conclude that Drayton did not have the opportunity to inflict the fatal wound.[11] Although the failure to adopt a strategy of shifting blame may give rise to a conflict of interest, "to do so the strategy must have been an *option realistically available* to trial counsel." *Mers*, 701 F.2d at 1331. (emphasis added). Based on our review of the record, we find that the alternative strategy proposed by Oliver was not an option available to trial counsel because the facts do not support the theory that Drayton stabbed the deceased.

The present case is distinguishable from *Foxworth v. Wainwright*, which was cited by the district court in granting relief. In *Foxworth*, four boys were charged with murder. One attorney represented William Foxworth and two of the other defendants, Charles Bevels and Robert Farmer. The prosecution's theory was that the four defendants choked the deceased by holding him down and pressing a stick against his throat. The medical evidence, however, showed that death was caused by blows to the head with a blunt instrument. Wit-

---

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) we adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**10.** According to Oliver, this alternative defense is more plausible for several reasons. First, Oliver argues that the theory that Drayton stabbed the deceased is consistent with the opinion of the medical examiner and with the physical evidence found on the scene. Second, it is undisputed that Drayton had a motive to kill Cooper. Drayton initially came to the scene because he had been advised that the Coopers intended to rob a friend of his. Oliver, on the other hand, merely happened to be with Drayton when he was advised of the attempted robbery, and decided to accompany him to the scene despite the fact she had no personal interest in the dispute. Finally, Oliver argues that the testimony adduced at trial establishes that Drayton had the opportunity to inflict the fatal wound.

**11.** The defense witnesses, with the exception of Oliver, testified that Drayton did not approach the deceased while the deceased struggled with Oliver. Oliver testified that Drayton was standing behind her before the struggle and at a subsequent evidentiary hearing she testified that she did not see Drayton during the struggle.

Two prosecution witnesses, Ernest Milton and Bessie Cooper, testified that Drayton held the deceased by her arm or arms. Milton further testified that Drayton was to the deceased's left, but on cross-examination he contradicted himself by saying that Drayton was in front of the deceased. A third prosecution witness, Johnny Roundtree, testified that Drayton held the deceased's left arm and pushed her. Roundtree's testimony was impeached, however, with his earlier statement that Drayton did not want to get involved in the argument between Oliver and the deceased. Clearly, this evidence is insufficient to establish that Drayton had the opportunity to stab the deceased in the back.

nesses testified that they had seen Bevels repeatedly striking the deceased with a stick earlier on the day of the murder. Despite this testimony, however, trial counsel chose to argue, as the defense's theory, that four other boys, all prosecution witnesses, had murdered the deceased.

The Fifth Circuit reversed Foxworth's conviction, finding that defense counsel, by virtue of the joint representation, was precluded from adopting a shifting blame strategy and arguing that Bevels alone was responsible for the victim's death. Under the circumstances, counsel's choice of the united front defense was "not a free choice of strategy." 516 F.2d at 1079. However, our case is unlike *Foxworth* where there was testimony to support the alternative defense theory. In the present case there is no clear evidence in the record to suggest that trial counsel's choice of strategy was limited by the joint representation.

We are also unpersuaded that Oliver's other allegations of prejudice establish that an actual conflict of interest existed. Attorney Emory's emphasis on Drayton's limited involvement in the altercation between Oliver and the deceased was little more than a summary of the defense witnesses' testimony. Oliver herself does not dispute the fact that she, and not Drayton, struggled with the deceased, that while struggling they fell onto a pile of trash, and that they continued to struggle until the police separated them. Similarly, the fact that counsel pointed out, on numerous occasions, that only Oliver was arrested at the scene does not justify reversal. Although Drayton's later arrest may have made him appear less culpable, it was an undisputed fact which added little to the state's case against Oliver. *See State v. Oliver*, 442 So.2d at 1076. Finally, attorney Emory did not undermine Oliver's case by calling Drayton as a witness. Drayton's cross-examination testimony that Oliver had

"picked [the victim] up to throw her" did not, in and of itself, discredit the theory that the deceased was the aggressor in the fight because there was already evidence in the record pointing to Oliver as the aggressor. Therefore, we do not find that Drayton's testimony at trial significantly damaged Oliver's case.

Having found that there was no conflict of interest in trial counsel's joint representation of co-defendants Oliver and Drayton, we need not decide whether, to establish a sixth amendment violation, petitioner must also demonstrate that the conflict had an adverse effect on counsel's performance.[12] For the foregoing reasons, the judgment of the district court granting Oliver's petition for habeas corpus is

REVERSED.

---

**12.** We have previously noted that the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) casts considerable doubt on the holding in *Baty v. Balkcom* that a petitioner need not demonstrate that the conflict had an adverse effect on counsel's performance. *Stevenson v. Newsome*, 774 F.2d 1558, 1562 (11th Cir.1985) (citations omitted); *Ruffin v. Kemp*, 767 F.2d 748, 751 & n. 6 (11th Cir.1985).