## 34746. ANGLIN v. THE STATE.

NICHOLS, Chief Justice.

John Thomas Anglin, Jr., was indicted along with his father, John Thomas Anglin, Sr., for the murders of Benjamin Harry (Benjie) Tygart and Johnny Waugh Luke. The junior and senior Anglins were tried separately, and were convicted and given life sentences for both offenses. The father's conviction was affirmed in *Anglin v. State,* 243 Ga. 720 (1979). This is the son's appeal.

Evidence was presented in the junior Anglin's case authorizing the jury to find that he and his father conspired together to create the impression that he had died accidentally in a house fire, thereby enabling his father to obtain the benefit of substantial policies of insurance on his life; that Junior's friend Benjie Tygart, who resembled Junior, was shot to death in the converted barn that Junior used as a dwelling, and the structure was set ablaze to give the impression that Junior had died in the fire; and that Junior's friend Johnny Luke was shot to death, and his body was thrown into a nearby swamp, because Luke had happened to be present when Tygart

was killed. The facts will be developed more completely as necessary for rulings on Junior's enumerations of error.

1. He first contends that the trial court erred in sentencing him to serve the two life sentences consecutively. He cites *Wade v. State,* 231 Ga. 131 (200 SE2d 271) (1973); *Mathis v. State,* 231 Ga. 401 (202 SE2d 73) (1973); and *Reynolds v. State,* 132 Ga. App. 89 (207 SE2d 630) (1974), contending that because the jury did not specify that his two life sentences were to be served consecutively, the trial court only could provide for the sentences to run concurrently. Code Ann. § 27-2510 (a). The writer never has agreed with the *Wade* decision and its progeny, although past and present majorities of this court have followed the *Wade* rationale. See *Amerson v. Zant,* 243 Ga. 509 (1979), construing Code Ann. § 27-2510 (b). The majority applies *Wade* in the present case since Code Ann. § 27-2503 (b), applicable to cases in which the death penalty may be imposed, provides that "Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law." The first enumeration of error is meritorious in the view of the majority. Upon receipt of the remittitur, the trial court is directed to resentence the defendant to serve the two life sentences concurrently. *Wade v. State,* supra.

2. The second enumeration of error contends that both of his in-custody statements should have been excluded. It is argued that the affidavit in support of the arrest warrant was insufficient, that his arrest therefore was illegal, and that even though his statement was voluntary, it was inadmissible because it was tainted by the illegal arrest. Brown v. Illinois, 422 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975). It is contended that the second statement given enroute from Atlanta to Valdosta should be excluded because he was not readvised fully of his Miranda rights.

The appellant was arrested in Texas under two Georgia warrants charging him with the murder of two individuals. Under Code Ann. § 27-103, an affidavit for an arrest warrant for murder need state only the offense charged, the county in which the offense was committed, and the time when it was committed. The warrants under which the appellant was arrested contained all the

required facts, and there is no merit in appellant's contention that he was illegally arrested.

As to the second statement, given two days later while he was travelling in custody from Atlanta to Valdosta, the GBI agent testified: "We didn't read — I didn't read directly from the card, nor did Deputy Starling, but we told him coming back down that he was aware of his rights — asked him if he was aware of his rights and told him that anything he told us during that time could and would be used against him." It is not necessary under such circumstances that the full Miranda warning be given again. Rather, it is sufficient if the first complete warning thereafter is reinforced by the authorities prior to each subsequent interrogation by reminding him that he previously was advised of his rights. *Moten v. State,* 231 Ga. 642, 644 (203 SE2d 527) (1974); *Bonds v. State,* 232 Ga. 694 (4) (208 SE2d 561) (1974); *Stapleton v. State,* 235 Ga. 513, 517 (220 SE2d 269) (1975). The trial court did not err in admitting the two statements in evidence.

3. The third enumeration of error complains of the admission in evidence of a wristwatch belonging to one of the victims. The watch had been found in Junior's automobile when it was impounded in Katy, Texas.

The automobile was impounded on the complaint of an apartment owner that it had been parked in his lot for over a month without having been moved. The contents of the automobile were inventoried, and the vehicle was turned over to a private company for towing and storage. The vehicle then was checked through the National Crime Information Center, and it was discovered that the owner was wanted for murder in Georgia. The Georgia authorities were notified and upon seeing the inventory list, they noticed the listing of the watch. A search warrant was then obtained, and the watch was seized as belonging to the victim, Benjie Tygart.

Contrary to Junior's assertions, the affidavit in support of the search warrant does not fail to comply with the standards set forth in Aguilar v. Texas, 378 U. S. 108 (84 SC 1509, 12 LE2d 723) (1964), because the Georgia police officer's name was misspelled and his jurisdiction was not stated. Neither is the affidavit deficient in its

factual recitations.

The original search was for inventory purposes, pursuant to the rules of the Katy, Texas Police Department, and was for the protection of both the owner and the police department when the vehicle was impounded upon the request of the apartment manager. The inventory search was not illegal, and the later search warrant, based upon this information, was sufficient. United States v. Rosenberg, 458 F2d 1183 (5th Cir. 1972); United States v. Gravitt, 484 F2d 375, 378 (5th Cir. 1973), cert. den. 94 SC 879 (1974); and *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979). There is no merit in this enumeration of error.

4. The fourth and fifth enumerations of error contend that the trial court erred in admitting evidence of acts and declarations of the senior Anglin made out of the presence of the junior Anglin and in charging on conspiracy.

There was direct evidence as to the existence of the conspiracy and Junior's participation in it, other than the evidence of the senior Anglin. Junior recently had made numerous credit purchases and loans covered by credit life insurance, recently had purchased life insurance policies that were payable to his estate in substantial amounts, and recently had executed a will authorizing his father as executor to claim his body and have it cremated. The payments required by the purchases and loans were far beyond Junior's financial means. This certainly was sufficient to establish a prima facie case of conspiracy between appellant and his father that would allow the introduction of the senior Anglin's testimony about the conspiracy. *Fallings v. State,* 232 Ga. 798 (1) (209 SE2d 151) (1974); *Knight v. State,* 239 Ga. 594 (238 SE2d 390) (1977). There is no merit in these enumerations of error.

5. The sixth enumeration of error contends that the charge on conspiracy as given by the trial court was erroneous. Junior contends that the court should have charged the jury that they were to reject and not consider any evidence submitted regarding the acts and declarations of an alleged co-conspirator in determining the existence of a conspiracy. The trial court correctly charged the substantive law on conspiracy, and then

charged: "Now, if you do not believe beyond a reasonable doubt that there was a conspiracy, or that the defendant on trial was a party to that conspiracy, then you would disregard the charge on that subject . . ." Because there was no request for a more detailed charge on this subject, there is no merit in this enumeration of error. *Knight v. State,* 239 Ga. 594 (3), supra.

6. The seventh enumeration of error contends that the trial court erred in admitting in evidence various insurance policies and bank transactions involving credit life insurance. The appellant argues that it never was proven that the senior Anglin had any knowledge of these insurance policies or accounts. The cases of *Johnson v. State,* 186 Ga. 324 (197 SE 786) (1938) and *Roger v. State,* 224 Ga. 436 (162 SE2d 411) (1968) are inapposite. The defendant in the present case knew the insurance policies existed. He had procured the insurance and had opened the accounts. This evidence was admissible during Junior's trial to prove motive. There is no merit in this enumeration of error.

7. Junior's eighth enumeration of error contends that the state's evidence was entirely circumstantial and did not exclude every reasonable hypothesis other than his guilt. Code Ann. § 38-109. Whether or not circumstances in a given case are sufficient to exclude every reasonable hypothesis other than the guilt of the accused primarily is a question for the jury, and this court will not disturb the jury's verdict unless the verdict of guilty is unsupportable as a matter of law. *Harris v. State,* 236 Ga. 242, 244 (1) (223 SE2d 643 ) (1976).

Junior's testimony was that he had been involved in sales of illegal drugs and that both victims were killed by a "hit man" who was gunning for him. He testified that he was present in his dwelling and saw the shootings but was able to escape out the door and flee. The state proved that for months preceding the shootings, he had been obtaining substantial amounts of insurance payable to his estate and had opened bank accounts and taken out loans in substantial sums covered by credit life insurance; that his installment payments on these various obligations were far in excess of his periodic income such that he could not reasonably have expected to discharge

these obligations; that he bought the automobile in which he escaped to Texas and kept his ownership of it secret from his close friends; that he equipped this vehicle with a radio that would allow him to monitor police radio channels; that he and the senior Anglin took items of furniture and other personal property out of the converted barn he used as a dwelling soon before it was burned and stored this property elsewhere; that when he was apprehended in Texas, he was living under an assumed name and was in possession of the victim's wristwatch; that his class ring was found in the vicinity of the burned body, rather than on his person or in his possession in Texas; that Benjie Tygart, whose severely burned remains were pulled from the fire, closely resembled Junior in physical size or appearance; that human blood, flesh and hair were found in his pick-up truck that was consistent with that of the other victim, Johnny Luke, whose body was found several miles away in the swamp; that soon before these events, he had executed a will directing the senior Anglin as his executor to take charge of his body and have it cremated; that his father made reference to this provision of the will in discussion with a witness to the fire before the body was discovered in the fire and later requested the coroner to fill out the death certificate clearly.

This evidence is sufficient to authorize the jury to find not only that the state's theory of murder to collect insurance proceeds is consistent with the proven circumstances, but that Junior's version of the killings — that is, murder of two innocent bystanders by a "hit man" who was gunning for him — was inconsistent with the proven circumstances. It is unlikely that a "hitman" who had killed two bystanders but not his quarry would go to the trouble of setting fire to the dwelling in which they were killed in order to burn one of the bodies beyond recognition, would throw the other victim's body into Junior's pickup truck, transport it several miles out into a swamp, drag it for a distance and leave it exposed upon the ground, while his quarry remained alive and able to flee or to conceal himself. On the other hand, these circumstances were consistent with the state's theory of murder to collect insurance proceeds. "It is not necessary

for the state to prove that it was impossible for the offense to have been committed by anyone else . . ." *Pinson v. State,* 235 Ga. 188, 190 (219 SE2d 125) (1975). There is no merit in the eighth enumeration of error.

*Judgment affirmed with direction. All the Justices concur, except Nichols, C. J., and Undercofler, P. J., who dissent as to Division 1 and as to the direction given to the trial court.*

SUBMITTED MARCH 30, 1979 — DECIDED JULY 2, 1979.

*Peter Zack Geer,* for appellant.

*Vickers Neugent, District Attorney, Jack Knight, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland,* for appellee.