John Thomas ANGLIN, Jr., Petitioner,

v.

Calvin E. GREEN, Warden, and Michael J. Bowers, Attorney General, Respondents.

Civ. A. No. CV485-120.

United States District Court, S.D. Georgia, Augusta Division.

June 27, 1986.

John Thomas Anglin, Jr., pro se.

Mary Beth Westmoreland, Atlanta, Ga., for respondents.

## ORDER

BOWEN, District Judge.

Petitioner is an inmate of the Georgia State Prison in Reidsville, Georgia. He was convicted in the Superior Court of Atkinson County, Georgia, of two murders and, curiously, was sentenced to serve two life sentences, consecutively. Leaving the question of petitioner's sentence in the next life to a higher court, the Georgia Supreme Court affirmed the conviction but directed the trial court to resentence petitioner to serve the two life sentences concurrently. *Anglin v. State*, 244 Ga. 1, 257 S.E.2d 513 (1979). Petitioner's conviction was based on the following:

Evidence was presented in the [petitioner's] case authorizing the jury to find that he and his father conspired together to create the impression that he had died accidentally in a house fire, thereby enabling his father to obtain the benefit of substantial policies of insurance on his life; that [petitioner's] friend Benjie Tygart, who resembled [petitioner] was shot to death in the converted barn that [petitioner] used as a dwelling, and the structure was set ablaze to give the impression that [petitioner] had died in the fire; and that [petitioner's] friend Johnny Luke was shot to death, and his body was thrown into a nearby swamp, because Luke had happened to be present when Tygart was killed.

*Anglin v. State*, 244 Ga. at 1–2, 257 S.E.2d 513. The jury's findings were supported by the following evidence:

[Petitioner's] testimony was that he had been involved in sales of illegal drugs and that both victims were killed by a "hit man" who was gunning for him. He testified that he was present in his dwelling and saw the shootings but was able to escape out the door and flee. The state proved that for months preceding the shootings, he had been obtaining substantial amounts of insurance payable to his estate and had opened bank accounts and taken out loans in substantial sums covered by credit life insurance; that his installment payments on these various obligations were far in excess of his periodic income such that he could not reasonably have expected to discharge these obligations; that he bought the automobile in which he escaped to Texas and kept his ownership of it secret from his close friends; that he equipped this vehicle with a radio that would allow him to monitor police radio channels; that he and [petitioner's father] took items of furniture and other personal property out of the converted barn he used as a dwelling soon before it was burned and stored this property elsewhere; that when he was apprehended in Texas, he was living under an assumed name and was in possession of the vic-

tim's wristwatch; that his class ring was found in the vicinity of the burned body, rather than on his person or in his possession in Texas; that Benjie Tygart, whose severely burned remains were pulled from the fire, closely resembled [petitioner] in physical size or appearance; that human blood, flesh and hair were found in his pick-up truck that was consistent with that of the other victim, Johnny Luke, whose body was found several miles away in the swamp; that soon before these events, he had executed a will directing [petitioner's father] as his executor to take charge of his body and have it cremated; that his father made reference to this provision of the will in discussion with a witness to the fire before the body was discovered in the fire and later requested the coroner to fill out the death certificate clearly.

*Id.* at 5–6, 257 S.E.2d 513.

Petitioner's *pro se* petition for a writ of habeas corpus alleges nine grounds for relief:

1) Petitioner's high school ring was seized during an illegal search and its introduction was not harmless;

2) Petitioner was convicted with evidence obtained as the direct result of an illegal arrest;

3) Petitioner was deliberately deceived by the police into consenting to the search of his mini-warehouse;

4) Petitioner was denied a fair trial with an impartial jury by the excessive number of photographs of the victim Johnny Luke that were admitted into evidence;

5) The transcript of petitioner's criminal trial is incomplete;

6) Petitioner has been denied a full and fair review of his appellate case on appeal and in the state habeas proceeding;

7) Petitioner was denied a fair trial and due process as a result of the statements made by the prosecution in closing arguments.

8) Petitioner was denied a fair trial and due process as a result of the adverse publicity about petitioner; and

9) Petitioner was denied the effective assistance of counsel at trial and on direct appeal.

The Court is limited as to those issues which it may address in a habeas corpus petition. If the state has provided petitioner with a full and fair hearing on a particular issue, petitioner is precluded from relitigating the claim in his federal habeas proceeding. 28 U.S.C. §§ 2254(d) (1982); *Allen v. Montgomery,* 728 F.2d 1409, 1412 (11th Cir.1984); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The findings of fact by the state court in petitioner's state habeas proceeding are presumptively correct. 28 U.S.C. § 2254(d) (1982); *Collins v. Francis,* 728 F.2d 1322, 1338 (11th Cir.1984); *Sumner v. Mata, supra.*

Section 2254(d) "establishes a presumption that the state court judgment is correct unless the applicant establishes one of a number of specific reasons to disregard it." *Guice v. Fortenberry,* 661 F.2d 496, 501 (5th Cir.1981) (en banc). This presumption can be "disregarded" when

the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

28 U.S.C. § 2254(d) (1982).

■ Petitioner's first, second and third grounds for relief are based on alleged fourth amendment violations. In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court declared that "where the state has provided an opportunity for full and fair litigation of a fourth amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted). *Id.* at 494, 96 S.Ct. at 3052. The Court finds that petitioner has had an adequate opportunity to litigate these first three claims in both his criminal trial appeal and in his state habeas proceeding. Accordingly, the Court DENIES habeas relief on petitioner's fourth amendment claims.

In his fourth ground for relief, petitioner claims that the trial court should not have allowed into evidence so many photographs of the corpse of victim Johnny Luke. These photographs depicted a brutally slain human body that had been subsequently attacked by animals or insects before it was finally discovered in the woods. The state habeas court found that these photographs were not so highly prejudicial and inflammatory so as to justify relief for petitioner. Murder cases not infrequently include grisly evidence. Such is the nature of the business. This Court has no reason to disagree with the findings of the state court based on the record. 28 U.S.C. § 2254(d).

■ Petitioner claims in his fifth ground for relief that the transcript of his trial is incomplete. This claim is based on the fact that numerous bench conferences between the attorneys and the trial judge were not part of the record. Petitioner's attention to detail is commendable, but his claim that the trial transcript is incomplete is without merit. Bench conferences need not appear in the record for the record to be complete. Petitioner's very experienced lawyer had the opportunity to request that the bench conferences be "on the record," *in toto,* but chose to waive this right. The fact that petitioner's counsel made this choice does not constitute a constitutional violation upon which habeas relief can be granted. We are, after all, primarily concerned with the evidence adduced for the jury's consideration.

■ Petitioner's sixth ground for relief is that petitioner was denied a full and fair review of his claims on appeal and in the state habeas proceedings. The record indicates that this claim is patently without merit with regard to the appellate review of petitioner's conviction. With respect to the state habeas proceeding, petitioner claims that it was unfair because the

Court's final order was drafted by counsel for the state. While it is not the best practice in a matter of such importance, there is nothing improper with the state court adopting as its own product the order drafted by one of the parties so long as the court is completely in agreement therewith. *See* C. Wright and A. Miller, *Federal Practice and Procedure*, § 2578, at 704–08 (1971). This Court, however, will " 'feel slightly more confident in concluding that important evidence has been overlooked or inadequately considered' when factual findings were not the product of personal analysis and determination by the trial judge." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 314 n. 1. (5th Cir.1977),[1] *quoting Louis Dreyfus & Cie. v. Panama Canal Co.*, 298 F.2d 733, 738 (5th Cir.1962). *See also Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.1980). The record in this case does not indicate that the habeas court mechanically adopted the state's proposed order. Thus, petitioner's claim for habeas relief on this ground is meritless and, therefore, is DENIED.

 Petitioner's seventh ground for relief is based on his allegation that petitioner was denied a fair trial and due process as a result of statements made by the prosecution's closing arguments. This Court will not grant habeas relief on the grounds of prosecutorial misconduct unless such misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir.1977). *See also Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed.2d 1314 (1935). In the present case, the defense counsel did not raise any objections to the prosecution's closing arguments.

Although counsel's failure to object to the argument does not bar [the court's] review of the claim in this case, the lack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument.... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.

*Brooks v. Kemp*, 762 F.2d 1383, 1397 n.19 (11th Cir.1985). Another factor to consider is that Judge H.W. Lott, who presided at petitioner's criminal trial, did not find it necessary to comment on the prosecution's closing arguments.

In *Bryant v. Caldwell*, 484 F.2d 65 (5th Cir.1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974), the Fifth Circuit stated that Georgia prosecutors, in state criminal trials, are allowed more freedom in jury arguments than are federal prosecutors. *Id.* at 66. A state prosecutor's arguments are to be adjudged, for the purpose of habeas corpus petitions, by the standard set forth in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The Supreme Court held that "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' *Lisenba v. California*, 314 U.S. 219, 236 [62 S.Ct. 280, 290, 86 L.Ed. 166] (1941)." *Id.* at 642, 94 S.Ct. at 1871. Rather, "the relevant inquiry [is] whether the remark violated due process." *Brooks v. Kemp*, 762 F.2d at 1400.

The *Donnelly* decision provides important guidelines for reviewing allegedly improper prosecutorial argument. Of primary importance is the need to examine the entire context of the judicial proceeding. Thus, it is not [this court's] duty to ask whether a particular remark was unfair, [the court is] concerned with whether it rendered the entire trial unfair. In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity.

*Id.* Ultimately, it is the question of "fairness" that the Court must address in deter-

---

1. Under *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) all decisions of the former Fifth Circuit handed down before October 1, 1981, will be followed by the Eleventh Circuit.

mining whether the prosecutor's arguments violated petitioner's right to due process.

In *Brooks,* the Eleventh Circuit adopted the "reasonable probability" test for "the fundamental fairness inquiry to be undertaken in cases where improper prosecutorial argument is at issue." *Id.* at 1401. The "reasonable probability" test was first articulated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Even though *Strickland* dealt with a specific Sixth Amendment violation, the Eleventh Circuit adopted the *Strickland* test because it presented a useful standard for determining the fundamental fairness of a trial or proceeding. *Brooks v. Kemp,* 762 F.2d at 1401. As applied to improper prosecutorial argument cases, the *Strickland* test requires "an assessment of errors to determine whether there is a reasonable probability that [the improper arguments] changed the outcome of a case" thereby rendering the trial fundamentally unfair. *Id.* at 1402.

Petitioner has a difficult burden in satisfying the "reasonable probability" test. However,

> asking whether the absence of improper argument would have, in reasonable probability, changed the result is consistent with the standards discussed in *Donnelly* and with subsequent cases applying the fundamental fairness standard. The several factors which those cases have found relevant operate in the same fashion under the "reasonable probability" test. For example, the willingness to tolerate an isolated or ambiguous argument stems from a recognition of its minimal effect upon the jury. Another

factor—the degree to which the challenged remarks have a tendency to mislead the jury and prejudice the accused, *Hance v. Zant,* 696 F.2d [940] at 950 n. 7 [1983]—is necessarily included within the reasonable probability test. Even argument greatly exceeding the bounds of propriety will not be fundamentally unfair in the guilt phase of a case with overwhelming evidence because of the low probability of the argument's impact. *See, e.g., Cobb v. Wainwright,* 609 F.2d 754 (5th Cir.) (given the strength of evidence against the defendant, the prosecutor's inflammatory argument did not render trial fundamentally unfair), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980); *Cronnon v. Alabama,* 587 F.2d 246 (5th Cir.) (improper argument not unconstitutional due to overwhelming evidence of guilt), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). On the other hand arguments serious enough to satisfy the "reasonable probability" test have been found "fundamentally unfair" under the *Donnelly* standard. *See, e.g., Houston v. Estelle,* 569 F.2d 372 (5th Cir.1978) (repeated unsupported and inflammatory references to defendant as liar and dealer of drugs, and argument that defense counsel's objections and motions for mistrial evidenced desire to take case away from the jury, all over objection by defense counsel, so pervaded the trial as to be unconstitutional—even a curative instruction did not mitigate actual prejudice to defendant).

(footnotes omitted). *Id.* at 1401–02. In the present case, petitioner has listed numerous remarks,[2] made by special prosecutor

---

**2.** Among the arguments petitioner lists as improper are the following:

(By Mr. Knight)
And, I went this past Sunday morning—Ms. Luke hasn't been able to attend this. She's in the hospital. I went this past Sunday morning to the hospital where Ms. Luke is. But, I'll be frank with you. I simply did not have the guts to go in that room and tell her that I had seen pictures of her son shot to pieces, laying on the ground where the buzzards had

torn him, where the maggots was eating him. I couldn't tell that lady that. And, I just turned around and didn't go in the hospital. Transcript of Closing Arguments of Counsel ("T.C.A.") at 26.
Now, I want to talk to you just a little bit before we get into the evidence proper about Mr. Geer. Mr. Geer is the finest criminal defense lawyer I know of. And, when I got to where I had made up my mind that I was at the end of the row on defending cases, and a

Jack Knight[3] and District Attorney Vickers Neugent in their closing arguments for the State, that could be termed improper. Improper arguments, however, do not necessarily result in fundamentally unfair proceedings. Moreover, defense counsel Peter

Zack Geer did not let the prosecution's improper arguments go unchallenged. Mr. Geer "clarified" the record so as to neutralize the impact of the statements made by Messrs. Knight and Neugent.[4] After carefully reading and considering the record in

client came to me, and if it looked like he could raise enough money, I'd send him to Peter Zack Geer. Because I think Peter Zack Geer can make the most out of nothing of any criminal attorney I've ever seen. T.C.A. at 27–28.

He'd give Ten Thousand Dollars for this closing argument in this case. I'm satisfied. I don't know what he's getting paid. Whatever it is, it ain't enough for what he's going through with. I don't know what he'll end up with out of this thing. T.C.A. at 31.

And, I don't know what it cost you Tommy Anglin, but it was smart to go get Geer. T.C.A. at 45.

... I ain't smart enough to understand these things—Mr. Geer will. I ain't kidding you. He's an expert on this sort of thing, see. And, when he gets up here, now, to talk to you—now, first, Peter Zack, he's a young buck and he ain't as hoarse as I am; His technique is to get back over here, about this distance—I can almost draw him a line. He'll get right along here (indicating), and he'll emote, folks. I'm gonna to tell you, he is a spell-binder of a speaker. And, if he ain't had any evidence from his side off (sic) the witness stand, Peter Zack will testify for you; and you track him. If he don't tell you about things that ain't in this evidence at all, if he don't—uh, good gracious alive—Peter Zack ought to draw a witness fee after every trial. He's the finest witness you've ever heard in his closing argument, about things—he'll come up with some, and he's a spell-binder, folks. I've got to warn you. T.C.A. at 56–57.

Peter Zack will make that Ten or Fifteen Thousand Dollar speech when he gets up there, and it'll be a spell-binder. T.C.A. at 57.

(By Mr. Neugent)
I was a little sympathetic with Mr. MacDougald. He was embarrassed, because he knows the truth. And, he's not the case—hardened steel, that Peter Zack Geer is. And, he couldn't swallow it. It's hard for him to swallow and stand up here and tell you Ladies and Gentlemen of the Jury that what he was telling you was the truth, because he is—I believe has some principle about himself. T.C.A. at 65.

Now, Ladies and Gentlemen, this did not happen in Chicago, Illinois; This did not happen

in New York City; It didn't happen in Atlanta, Georgia. It didn't happen over in Albany, Georgia, where Mr. Peter Zack Geer is going to take his big fat fee and go back as soon as he's made his great speech for you. We won't see him until somebody else does something like this, in a high penalty case; Then, Peter Zack will be back down here to see us and you. T.C.A. at 70.

God gave him a talent and he uses it. I'm sorry he uses it like he does sometimes ..., But, when you get through listening to the hot air, what have you got? You've got the same evidence ... [W]hat he says can't change the evidence. T.C.A. at 71.

And, it ought to be strange to you, that a man can come into court and not lay out his evidence, if he wanted to be fair and honest. If he wanted to reach the truth, wanted to find the truth and wanted to represent the truth ... T.C.A. at 78.

He had a smart answer. He had an answer fixed up. Why? Because he had been coached. T.C.A. at 79.

I find it even strange that he hired Peter Zack Geer. I don't know why Mr. Geer ... [u]nless he knew the fat was in the fire, and, unless he, by hook or crook, was able to get somebody to do some fast talking, that he would sit in judgement [sic] and be judged and found guilty ... T.C.A. at 91–92.

[W]hen Peter Zack Geer told him, says, "Son", says, "That won't wash. That little story will put you in the electric chair. I can't represent you when you tell a story like that." T.C.A. at 93.

3. Petitioner has raised an objection to the use of a special prosecutor for petitioner's criminal trial. This claim is without a legal basis and is, therefore, frivolous.

4. Included in defense counsel Peter Zack Geer's closing argument was the following clarification of the state's allegations about Mr. Geer:

Now, Ladies and Gentlemen of the Jury, I listened to what my friend, Jack Knight, had to say about me, and what my friend, Vick Neugent, had to say about me. And I want to assure you that I am not a magician. I don't have any rabits (sic) to pull out of my coat.

this case, the Court concludes that there is *not* a reasonable probability that the prosecution's statements, whether taken individually, or within the context of the entire closing argument, changed the outcome in petitioner's criminal trial.

 Petitioner's eighth ground for relief is based on the adverse publicity about petitioner that appeared in the newspapers prior to, and during, petitioner's trial.

There is little doubt that petitioner's trial received a great deal of publicity and that it is highly unlikely that all of the jurors were totally ignorant of the facts of this case prior to being chosen as jurors. However, it is well-settled that "[q]ualified jurors need not ... be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). Defendant has not presented any evidence of prej-

I'm just a normal human being. I'm not a trickster, and I'm not a prankster. And I cannot do all the things that my good friends have attributed to me. I have tried a lot of lawsuits in my life. That's the way I make a living. My daddy was a lawyer from Colquitt, Georgia, a country town. And, they were both judges. I have an uncle that is a Superior Court Judge that has been on the bench in Georgia longer than any other judge in this State. I have been around and been associated with the law all of my life. But I am not the artist and the magician that my friends would have you believe. Now, let's examine why they said those things. Of course they knew I had the concluding argument. One of them, and I believe it was Jack, said that oh, I would—they knew I would give Ten Thousand Dollars to have the concluding argument. Well, I'm going to tell you something. They would give more than that to have it. They wish they had it. But under the law of Georgia, they do not have it. Now, their memories must be short, or they must think that your memories are short. They would have you believe they continue to refer me, particularly Jack, as the best defense lawyer they know. Vick said I was a good one I don't know. He bragged on me about being a defense lawyer. Or they claimed I was a spell-binder, and all that sort of business. Their memory must not reharp back to when a total family, the Alday family, at Donaldsonville, Georgia, was wiped out by some brutal murders. Their minds must not harp back to who it was that prosecuted and conducted, by myself, the state's case, prosecuting the killers of the Aldays. It was Peter Zack Geer. Jack Knight—and I know he remembers this, and I know Vick remembers it—Vick said that I had some kind of God-given talent about my mouth, but he didn't like the way I used it. He implied—he implied that I only used my mouth for sinister and bad reasons and purposes. Well, I know that my friend, Vick Neugent, must remember that right here in Judge Lott's court, except it was in Berrien County, Georgia, when Jack Knight had had an operation, he sent one of his clients to hire me to prosecute and help Vick Neugent prosecute a fellow named Pounds that had killed

Billy Surrency. That hasn't been long ago, Vick, and I know you remember, and you know that I helped you get ready and prepared, and we made the Defendant plead guilty before we went to trial. Jack Knight failed to tell you that a few years ago, in Tifton, Georgia, when Ruby Graham killed Big Jim Hall at a grocery store, that Jack Knight defended Ruby Graham for murder, and Peter Zack Geer prosecuted Ruby Graham for murder—the murder of Big Jim Hall. And I convicted her, Jack. They failed to tell you, when they talk about me being a slick-tongued artist, always for the defense, apparently implying to you that I am against law and order, they fail to you (sic) that probably with the exception—and I would say the exception of Herman Eugene Talmadge, that Peter Zack Geer has said more puppetry on every *stump* in Georgia, on every radio station in Georgia, on every television station in Georgia, more for law and order than any other living human being in Georgia. And, I challenge anyone to defy that.

They failed to tell you that when I was dealing with public affairs, that all the peace officers of Georgia, all the Sheriffs of Georgia, most all the GBI agents, all the State Crime Lab, all the law enforcement people, were the warmest and closest supporters I had. So, no, Peter Zack Geer has not devoted his time and whatever feeble and humble talents that the Lord might have conferred upon me, to being against law and order. That is not the record.

Now, Ladies and Gentlmen (sic) of the Jury, I have at this moment, within my hands and within my control, the ability, if I wanted to, the opportunity, to make a scaling [sic] attack upon Jack Knight and Vick Neugent. I could spend the next thirty minutes, if I wanted to, ripping them apart. But, we're not here to try Jack Knight. We're not here to try Vick Neugent. And, we're not here to try Peter Zack Geer. I want you to understand that. You are here to try a serious murder case. And, it is the most serious case that you probably will ever sit on in your lifetime. T.C.A. at 111–114.

In my estimation, Peter Zack gave as good as he got, and then some.

udice by the jurors. More importantly, petitioner's experienced lawyer did not move for a change of venue, thereby suggesting that the pre-trial publicity was not so great as to affect the fairness of the trial. Petitioner's constitutional right to a fair trial and due process requires that petitioner have "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). There is no evidence in the record that the jurors were anything but impartial throughout petitioner's trial.

As the Supreme Court stated in *Murphy v. Florida,* "[e]ven these indicia of impartiality might be disregarded in a case where the general atmosphere in the community or courtroom is sufficiently inflammatory." *Id.* 421 U.S. at 802, 95 S.Ct. at 2037. However, the fact that there was a lot of publicity in the community does not, in and of itself, suggest that the jurors could not be impartial in this case. Furthermore, the fact that there were occasional outbursts by spectators at the trial does not necessarily mean that the jurors were not impartial and indifferent in reaching their verdict. A murder case cannot be dispassionately tried in a total vacuum. Petitioner's right extends to a fair trial, not an automatic acquittal.

The Court cannot grant habeas relief on the grounds that the publicity about petitioner's trial denied petitioner of a fair trial and due process, based on the facts petitioner has alleged and the evidence appearing in the record.

Petitioner's ninth and final ground for relief is that petitioner's sixth amendment right to assistance of counsel was denied by the ineffectiveness of his attorney at his criminal trial and on direct appeal of his conviction. Petitioner raises three separate allegations under his claim of ineffective assistance of counsel. First, petitioner alleges that his attorney acted unreasonably in not objecting to the admissibility of the evidence which was the subject of petition-

er's fourth amendment claims. Second, petitioner alleges that he was denied the effective assistance of counsel because his attorney also represented his co-indictee and father John Thomas Anglin, Sr. Petitioner's third allegation is that his counsel should have objected to the venue of his trial because of the pre-trial publicity.

The issue of whether petitioner received ineffective assistance of counsel is a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. at 697, 104 S.Ct. at 2070; *Douglas v. Wainwright,* 714 F.2d 1532, 1554 (11th Cir.1983). Thus, "in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on [this Court] to the extent stated by 28 U.S.C. § 2254(d)." *Strickland v. Washington,* 466 U.S. at 698, 104 S.Ct. at 2070. In *Strickland,* the Supreme Court announced a two-prong test for determining ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[5]

*Id.* at 466 U.S. 687, 104 S.Ct. at 2064. "Effective assistance does not mean errorless assistance, nor counsel judged ineffective by hindsight." *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). "Rather, the methodology for applying the standard involves an inquiry into the actual performance of counsel conducting the defense and a determination of whether reasonably effective assistance was rendered based upon the *totality* of circumstances and the entire

---

**5.** The second prong of this test was the basis for the "reasonable probability" test discussed above.

record." *Nelson v. Estelle,* 642 F.2d 903, 906 (5th Cir., 1981) (emphasis in original).

 Anglin alleges that his lawyer, Peter Zack Geer, never raised objections to evidence which he contends was obtained by the police in violation of his fourth amendment rights. Certainly, this evidence was prejudicial to petitioner's defense. If such evidence could have been properly excluded from petitioner's criminal trial, the failure of petitioner's counsel to object to the admissibility of such evidence may constitute ineffective assistance of counsel under the totality of the circumstances. A lawyer is not required, however, to pursue ephemeral concepts or to voice every legal theory conceived in the untrained, possibly criminal, mind of his client.

Petitioner also claims that he was denied effective assistance of counsel because Mr. Geer had a conflict of interest. "[Q]uestions involving conflicts of interest are mixed determinations of law and fact not entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1982). [*Baty v. Balkcom,* 661 F.2d 391, 394 n. 5 (5th Cir., Unit B, 1981) [6], *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).]" (footnote omitted). *Oliver v. Wainwright,* 782 F.2d 1521, 1524 (11th Cir.1986). *See also Goodwin v. Balkcom,* 684 F.2d at 803.

> For a conflict of interest to cause representation to fail Sixth Amendment standards, this [Eleventh] Circuit requires that the conflict be actual, not speculative. An actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant when the same counsel is representing.... Once we have found an actual conflict of interest, however, we have, without further inquiry, presumed prejudice to the defendant.

*Baty v. Balkcom,* 661 F.2d at 395. *See also, Ruffin v. Kemp,* 767 F.2d 748 (11th

Cir., 1985). The Supreme Court, however, has established that until petitioner "shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).

Furthermore, the Supreme Court's decision in *Strickland* "casts considerable doubt upon that portion of *Baty* which holds that a petitioner need not demonstrate an 'adverse effect' on counsel's performance." *Ruffin v. Kemp,* 767 F.2d at 751, n. 6. *See also Stevenson v. Newsome,* 774 F.2d 1558, 1562 (11th Cir.1985). In language which would appear to vindicate the sound logic of the *Baty* trial court, the Supreme Court stated:

> In *Cuyler v. Sullivan,* 446 U.S., at 345–350, [100] S.Ct., at 1716–1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, *e.g.,* Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. *Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance."*

(Emphasis added) (Citation omitted). *Strickland v. Washington,* 466 U.S. at 692,

---

**6.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), the Eleventh Circuit adopted as binding precedent all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

104 S.Ct. at 2067. *See also Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). When this portion of *Strickland* is read together with the two-prong test for ineffective assistance of counsel, discussed above, *Strickland* "arguably requires a two-pronged showing to justify habeas relief on account of an attorney's conflict of interest: not only (1) that there was an actual conflict of interest, but also (2) that the conflict of interest adversely affected the attorney's performance." (footnote omitted). *Ruffin v. Kemp,* 767 F.2d at 751.

An actual conflict of interest exists whenever "counsel's introduction of probative evidence or *plausible* arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Baty v. Balkcom,* 661 F.2d at 395 (citations omitted) (emphasis added). To demonstrate an actual conflict, defendants must be able to point to " 'specific instances *in the record* to suggest an actual conflict or impairment of their interests.' " *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.) (citation omitted) (emphasis added), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). A conflict which is merely hypothetical does not warrant reversal. *Id.* at 1331. Thus, an alleged conflict of interest is not significant unless the alternative defense or strategy suggested is plausible. *Foxworth v. Wainwright,* 516 F.2d 1072, 1080 (5th Cir.1975) (citation omitted). (footnote omitted). *Oliver v. Wainwright,* 782 F.2d at 1524–25 (11th Cir.1986). Failure to adopt a strategy of shifting blame may give rise to a conflict of interest, but such strategy "must have been an option realistically available to trial counsel." *United States v. Mers,* 701 F.2d at 1331.

Petitioner claims that he and his co-indictee, John Thomas Anglin, Sr., were represented by the same attorney, Peter Zack Geer. The fact that the two Anglins were tried separately does not preclude the possibility that a conflict of interest arose for Mr. Geer in representing these two defendants. The interests of the two Anglins could have conflicted with one another at pretrial proceedings (*e.g.,* plea bargaining) or during the actual criminal trials.

Petitioner's claim of ineffective assistance of counsel based on his counsel's failure to object to the venue of the trial is without merit. As discussed above, the Court does not find that the pretrial publicity significantly affected the fairness of petitioner's criminal trial. Under the totality of the circumstances of this case, the fact that petitioner's counsel might not have objected to the venue is of no consequence. The fairness of petitioner's trial was not affected by the location of the courthouse.

The Court is concerned that, as a *pro se* litigant, petitioner is not able to succinctly articulate and present his best arguments on two allegations giving rise to the ineffective assistance of counsel claim. *See generally, Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). More specifically, the Court needs to know more about petitioner's claim that his counsel never objected to the admissibility of certain evidence that might have been obtained in violation of petitioner's fourth amendment rights. Furthermore, the Court needs to know more about Mr. Geer's representation of John Thomas Anglin, Sr. and how it might have affected Mr. Geer's representation of petitioner, John Thomas Anglin, Jr.

█ Petitioner has the burden of establishing the need for an evidentiary hearing in a habeas corpus proceeding. *Birt v. Montgomery,* 725 F.2d 587, 591 (11th Cir. 1984); *Douglas v. Wainwright,* 714 F.2d 1532, 1543, n. 10 (11th Cir.1983); *Dickson v. Wainwright,* 683 F.2d 348, 351 (11th Cir.1982). The threshold test for determining if petitioner has met this burden is: "whether the petitioner's allegations, if proved, would establish the right to" habeas relief. *Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963); *Birt v. Montgomery,* 725 F.2d at 591; *see also Ross v. Hopper,* 716 F.2d 1528, 1534 (11th Cir.1983); *Guice v. Fortenberry,* 661

F.2d 496, 503 (5th Cir.1981) (*en banc*); *Cronnon v. Alabama,* 587 F.2d 246 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). For the foregoing reasons, the Court concludes that petitioner has met the burden of establishing that an evidentiary hearing is necessary on petitioner's claim of ineffective assistance of counsel. *See* Rule 8 of the Rules Governing Habeas Corpus Cases Under § 2254.

The Court hereby appoints Richard E. Allen of Augusta to represent petitioner on the above claims pursuant to Rule 8(c) of the Rules Governing Habeas Corpus Cases Under § 2254. The Court GRANTS petitioner an evidentiary hearing on his claims regarding the ineffective assistance of counsel at petitioner's trial and on direct appeal of his conviction. The court clerk is directed to schedule said hearing for July 17, 1986, at 9:00 o'clock A.M., in Courtroom 2 at the United States Courthouse in Augusta, Georgia.