Judson RUFFIN, Petitioner-Appellant,

v.

## Ralph KEMP, Warden, Respondent-Appellee.

### No. 84–8679.

United States Court of Appeals, Eleventh Circuit.

July 18, 1985.

Mary Beth Westmoreland, Atlanta, Ga., for respondent-appellee.

Joseph M. Nursey, Atlanta, Ga., for petitioner-appellant.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Judson Ruffin ("Ruffin") was convicted of murder, armed robbery, kidnapping, aggravated assault, and possession of a fire-

arm in the Superior Court of Taliaferro County, Georgia, on November 30, 1977. He is currently under sentence of death. Ruffin appeals from that portion of the district court's decision which rejected Ruffin's argument that his trial attorney, Walton Hardin, rendered ineffective assistance of counsel due to the presence of a conflict of interest.[1] 591 F.Supp. 1136 (1984). We reverse.

## I. FACTS

The charges against Ruffin arose from the armed robbery of a service station off Interstate 20 near Crawfordville, Georgia, on July 26, 1976. During the course of the robbery, the attendant at the station, Henry Lee Phillips, and his stepson, Bonnie Bullock, were abducted, and Bonnie Bullock was subsequently slain.

Ruffin was arrested and incarcerated on August 29, 1976. In March of 1977, the superior court judge called Mr. Walton Hardin ("Hardin") and asked him to come by the judge's office. According to Hardin, when he arrived at the judge's office, the judge informed him that "he was going to do me a favor." The judge then appointed Hardin to represent Ruffin and his two codefendants, Jose High ("High") and Nathan Brown ("Brown").[2] High subsequently retained private counsel, but Hardin tried both Brown's and Ruffin's cases.

Ruffin's trial began on November 29, 1977. On the Thursday before trial began, Hardin was notified that Ruffin's case would be called the following week. When notified of this, Hardin "dropped everything" he was doing and went to see the district attorney to try and work out a plea bargain for Brown.

Hardin felt that he had successfully worked out a plea bargain for Brown. The agreement would require that Brown testify for the state in the criminal case against

---

1. The district court granted habeas corpus relief on other grounds as to Ruffin's sentence of death, and the state does not appeal that decision.

2. The Georgia Supreme Court has since imposed a rule in all death penalty cases that each defendant is to be provided with separate and independent counsel. ·See *Fleming v. State*, 246 Ga. 90, 270 S.E.2d 185, *cert. denied*, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980).

Ruffin. The plea bargain never materialized, but the testimony is conflicting as to the reason the agreement collapsed. At one point, Hardin testified that Brown refused the offer to testify against his codefendants, but at another point Hardin testified that the state reneged on the tentative agreement. In any event, the record before us clearly establishes that there were actual negotiations for a plea bargain on behalf of Brown which involved the offer of Brown's testimony against Ruffin. It is also clear that a tentative agreement was reached. What is unclear is whether the prosecutor reneged on the agreement or whether Brown backed out.[3]

At trial, Ruffin was convicted and sentenced to death. In a separate trial, Brown was also convicted and sentenced to death. Ruffin's conviction was affirmed on direct appeal, and after exhausting his state remedies, Ruffin commenced the instant federal habeas corpus proceedings. The district court held that "[w]hatever possibility existed for a conflict of interest in the trial counsel's representation of these two codefendants never *actually* occurred." (Emphasis in original).

## II.  DISCUSSION

In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court established the standard for reviewing ineffective assistance of counsel claims arising from alleged conflicts of interest. In *Cuyler,* the Court held that a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718. "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not

demonstrate prejudice in order to obtain relief." *Id.* at 349–50, 100 S.Ct. at 1718–19.

The former Fifth Circuit in *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir.1981) (Unit B), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982),[4] formulated a helpful definition of "actual conflict of interest." Under that definition, an attorney actively represents conflicting interests "if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Id.*

Both the Supreme Court and our predecessor court have dealt with the problem of an attorney's conflict of interest in the context of plea bargain negotiations. In *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978), the Supreme Court recognized that a conflict of interest stemming from multiple representation may prevent an attorney "from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution."

In *Baty,* the former Fifth Circuit also recognized the possibility that a conflict of interest might impair an attorney's ability to plea bargain on behalf of an individual client. 661 F.2d at 397. The attorney in *Baty* represented two codefendants in the pretrial stage of the proceedings and arranged for another attorney to represent one of the defendants on the eve of trial. 661 F.2d at 392–93. During the pretrial proceedings while the single attorney represented both defendants, the state offered to enter into a plea agreement. 661 F.2d at 397. The court held that "the conflict of interest before trial alone would be suffi-

---

**3.** The state habeas court conducted the evidentiary hearing in the instant case. Neither party contends that a further evidentiary hearing is needed. Similarly, the state does not dispute the fact, nor could they on this record, that the above-mentioned plea negotiations took place and that there was a tentative understanding which broke down either because Brown backed out or the state reneged.

**4.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

cient to grant ... [the] habeas petition" because "[h]ad he not been facing a conflict of interest, ... [the attorney] might have been able to negotiate a plea agreement on ... [one defendant's] behalf in return for becoming a prosecution witness against ... [the other defendant]." *Id.*

The instant case appears to be more egregious than the possibilities noted in *Holloway* and *Baty* since Hardin did more than simply fail to seek a plea bargain on behalf of either of the defendants. Here, Hardin "resolved" the conflict of interest by breaching his duty of loyalty to one client in favor of another.[5] It is clear beyond cavil that in offering the testimony of Brown against Ruffin in exchange for a lesser penalty for Brown, Hardin's conduct "would significantly benefit one defendant ... [while] damag[ing] the defense of another defendant whom the same counsel is representing." *Baty, supra,* at 395.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), arguably requires a two-pronged showing to justify habeas relief on account of an attorney's conflict of interest: not only (1) that there was an actual conflict of interest, but also (2) that the conflict of interest adversely affected the attorney's performance.[6] From the foregoing discussion, it is obvious that Hardin labored under an actual conflict of interest. We turn then to inquire whether the conflict of interest adversely affected Hardin's performance. "[I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds

5. Although attorney Hardin clearly breached his duty of loyalty to Ruffin, we note that the prosecutor in the instant case was not without fault. Such an obvious conflict of interest should have been readily apparent, and the prosecutor should have reported the conflict to the trial court and insisted upon the appointment of independent counsel.

6. At first glance, *Cuyler* also seems to require that the defendant demonstrate that a conflict of interest had some adverse effect on his counsel's performance. In *Baty v. Balkcom,* 661 F.2d 391, 396 (5th Cir.1981) (Unit B), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982), however, the former Fifth Circuit held that "the Supreme Court did not intend to establish a standard requiring proof of adverse effect on counsel in addition to proof of an actual conflict of interest." Although we need not decide the issue because we find that an actual conflict did affect the adequacy of attorney Hardin's performance, we note that the Supreme Court's intervening decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), casts considerable doubt upon that portion of *Baty* which holds that a petitioner need not demonstrate an "adverse effect" on counsel's performance. In *Strickland v. Washington,* the Court stated:

One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan,* 446 U.S. at 345–50, 64 L.Ed.2d 333, 100 S.Ct. 1708 [1716–19], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties.

Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, e.g., Fed R Crim Proc 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. *Even so, the rule is not quite the per se rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance."*

466 U.S. at ___–___, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97 (emphasis added and citations omitted) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718, 1719, 64 L.Ed.2d 333 (1980)). *Compare Baty v. Balkcom,* 661 F.2d at 396 (Johnson, J.) (holding that adverse effect on counsel's performance need not be shown) *with Burger v. Kemp,* 753 F.2d 930, 942 (11th Cir.1985) (Johnson, J., dissenting) (requiring a two-pronged showing of (1) active representation of conflicting interests and (2) adverse effect on counsel's performance).

That portion of *Baty* relied upon in this opinion—defining the existence of an actual conflict of interest—is, however, clearly still good law. *Baty* held that "[a]n actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Id.* at 395.

**752**

himself compelled to *refrain* from doing...." *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978) (emphasis in original). The instant case provides a good illustration. Here, Hardin's failure to seek a plea bargain on behalf of Ruffin constitutes an adverse effect on the attorney's performance. While Hardin was negotiating for a plea bargain for Brown, having offered Brown's testimony against Ruffin, he could not at the same time effectively negotiate a plea bargain for Ruffin and offer Ruffin's testimony against Brown as part of the deal. Although the evidence in this case does establish that the prosecutor was open to plea bargain negotiations since there were negotiations with respect to Brown, it might be argued that Ruffin must show that the prosecutor probably would have accepted such a plea bargain on Ruffin's behalf. However, such a showing would amount to a demonstration of actual prejudice. The case law is clear that actual prejudice need not be shown. Once a habeas petitioner has proved the existence of an actual conflict, only an adverse impact on the attorney's performance need be shown. *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). On the facts of this case, Hardin's conduct of actual plea bargain negotiations for Brown, offering as part of the deal Brown's testimony against his own client, precluded effective plea bargaining on behalf of Ruffin and thus constituted an adverse impact on counsel's performance.[7] We hold that Ruffin has satisfied the "adverse effect" prong of the test.

Having found both an actual conflict of interest and an adverse impact on the attorney's performance, we REVERSE the decision of the district court and REMAND the case to the district court with instructions to issue the writ of habeas corpus.

REVERSED and REMANDED.

---

7. *Burger v. Kemp*, 753 F.2d 930 (11th Cir.1985), is readily distinguished. In *Burger*, the prosecutor "flatly refused to even discuss ... [a plea bargain] in any terms." *Id.* at 940. As noted above, the record clearly establishes that there was no such flat refusal in the instant case.