Frank YECK, Petitioner–Appellant,

v.

Truett GOODWIN, Superintendent, Central Correctional Institute, Respondent–Appellee.

No. 92–8150.

United States Court of Appeals, Eleventh Circuit.

March 9, 1993.

Darel C. Mitchell, Rich, Bass, Kidd and Witcher, Decatur, GA, for petitioner-appellant.

Susan V. Boleyn, Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, GA, for respondent-appellee.

Before HATCHETT, EDMONDSON and BIRCH, Circuit Judges.

HATCHETT, Circuit Judge:

This case presents the issue of whether a lawyer's representation of the appellant and a codefendant created such a conflict of interest that it adversely affected the lawyer's performance. Finding no adverse effect on the lawyer's performance, we affirm the district court's denial of habeas corpus relief.

## FACTS

On August 24, 1983, John Jackson called his estranged wife ("the victim") of four months and told her that he wanted to reconcile their marriage. He suggested that they drive to "Clark's Hill" to discuss their marriage. The next morning, on August 25, 1983, the victim met Jackson, and he told her that Frank Yeck, the appellant, had her bible and they should get it before going to Clark's Hill. The victim felt uneasy about going to Yeck's house because in October of 1981, she had been subjected to sexual bondage at Yeck's house, but Jackson assured her it would be safe. With hesitation, the victim agreed, and she and Jackson drove to Yeck's house.

Upon entering Yeck's house, the victim realized that Jackson and Yeck had a prearranged agreement about what would happen to her. Under the agreement, Jackson would leave the victim with Yeck to perform sexual favors for a few days to extinguish a $200 debt Jackson and the victim owed Yeck. The victim testified that she did not object out of fear and because Jackson threatened her.

While Yeck, Jackson, and the victim stood in the living room, Yeck instructed the victim to remove all of her clothing. She complied without hesitation. After leading her into the bedroom, Yeck then left the bedroom and joined Jackson outside. With the victim's consent, Jackson left the house in the victim's automobile. Yeck returned to the bedroom and engaged in various sexual bondage acts with the victim.

Yeck claimed that he offered the victim several options: (1) leave her bible with him as collateral; (2) sign a mechanic's lien on her car; (3) give him the car; (4) stay with him for a few days; or (5) leave with the bible. Yeck testified that the victim chose to stay with him. Yeck also testified that the victim was a willing partner; the victim claimed that she was not a willing partner, but afraid to object.

The next day Jackson returned. Yeck ordered the victim into the living room where he ordered her to kneel before him to show Jackson what had been done. After Yeck instructed the victim to remove her clothing, Jackson witnessed the victim's bruised breasts, wrists, and ankles. Jackson promised that he would return to Yeck's house to stay with the victim while Yeck was at work; instead, Jackson left the house and never returned. When Yeck left the house later that afternoon, the victim escaped and reported to law enforcement officers the events that had occurred at Yeck's house.

## PROCEDURAL HISTORY

Law enforcement officers arrested Yeck on the morning of August 27, 1983, and arrested Jackson on the afternoon of August 29, 1983. A grand jury indicted each one on one rape charge, two aggravated sodomy charges, and one false imprisonment charge. On September 7, 1983, the Superior Court of Columbia County, Georgia held a preliminary hearing at which the court appointed Douglas J. Flanagan, a lawyer, to represent Jackson. Yeck retained G. Larry Bonner as his lawyer. After the preliminary hearing, Yeck also retained Flanagan as his lawyer. Flanagan filed motions for bail for Yeck and Jackson on October 3, 1983. Yeck posted bail; Jackson did not post bail. On the same day, Flanagan also filed numerous pretrial motions on behalf of Yeck. On October 5, 1983, Flanagan entered pleas of not guilty for Yeck and Jackson. Prior to Yeck's trial, Jackson entered into a plea agreement, which required him to testify in exchange for a guilty plea on only the false imprisonment charge.

On April 30, 1984, the jury found Yeck guilty on all four counts of the indictment. The next month, on May 30, 1984, Jackson changed his not guilty plea to guilty on the false imprisonment charge. On May 31, 1984, the court sentenced Jackson to five years on the false imprisonment charge. On the same day, May 31, 1984, the court sentenced Yeck to life imprisonment on the rape charge, twenty years each on the two aggravated sodomy charges, and five years on the false imprisonment charge, all to be served consecutively.

Also on the same day, May 31, 1984, Flanagan filed a motion for continuation of bail, a motion for supersedeas bond pending appeal, and a motion for a new trial on behalf of Yeck. Flanagan later represented Yeck in an appeal to the Court of Appeals of Georgia, which affirmed Yeck's convictions and sentences in *Yeck v. State*, 174 Ga.App. 710, 331 S.E.2d 76 (1985).

On July 28, 1987, with a new lawyer, Yeck filed a petition for state habeas corpus relief in the Superior Court of Chatham County. As grounds for relief, Yeck alleged ineffective assistance of counsel and improper jury instructions. On May 16, 1988, the state court conducted a habeas corpus evidentiary hearing, and on June 29, 1988, the court denied Yeck relief. On October 19, 1988, the Supreme Court of Georgia denied Yeck's application for a certificate of probable cause to appeal.

After exhausting state remedies, Yeck initiated this federal habeas corpus proceeding. In his amended petition, Yeck asserted ineffective assistance of counsel and improper jury instructions as grounds for relief. After a report and recommendation from a United States Magistrate Judge, the district court adopted the magistrate judge's recommendation and denied Yeck's habeas corpus petition. Yeck appeals the district court's ruling.

## ISSUES

We are asked to decide whether Yeck had ineffective assistance of counsel due to a conflict of interest, and whether the trial court erred in charging the jury.

## DISCUSSION

■ The state court held a hearing on the issues raised in the habeas corpus petitions, adequately addressing the conflict of interest claim. Neither the magistrate judge nor the district court held evidentiary hearings. Generally, the state court's findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Lightbourne v. Dugger*, 829 F.2d 1012 (11th Cir. 1987). Because the lower court's findings are supported by the record, they will be accorded the usual presumption of correctness. *See* 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). Additionally, whether Yeck had ineffective assistance of counsel is a mixed question of law and fact reviewed *de novo*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980)).

■ The Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64

L.Ed.2d 333 (1980) enunciated the proper standard for reviewing ineffective assistance of counsel claims due to alleged conflicts of interest where the defendant raised no objection to the joint representation at trial. According to *Cuyler,* Yeck must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718.* Additionally, the Court held that where a defendant satisfies this standard, prejudice need not be shown. *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1719; *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. This court in *Ruffin v. Kemp,* 767 F.2d 748 (11th Cir.1985) defined an "actual conflict of interest" as an instance where "counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." *Ruffin,* 767 F.2d at 750 (quoting *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982)).

In *Ruffin,* this court held that a court-appointed lawyer, who attempted to arrange for a plea bargain where one codefendant would plead guilty and testify against the other, labored under an actual conflict of interest. *Ruffin,* 767 F.2d at 751. The court found that because the lawyer negotiated a plea bargain for one codefendant that required him to testify against the second codefendant, the lawyer could not negotiate a plea bargain for the second codefendant and offer his testimony against the first codefendant. *Ruffin,* 767 F.2d at 752. *Ruffin* also held that the habeas corpus petitioner must prove that this actual conflict had an adverse impact on his lawyer's performance. *Ruffin,* 767 F.2d at 751. The court concluded that the lawyer's actions of offering the first codefendant's testimony against the second effectively precluded plea bargaining for the first codefendant and constituted an adverse impact on counsel's performance.

■ This case is distinguishable from *Ruffin.* In this case, Jackson did not really testify against Yeck. Rather, Jackson's testimony supported Yeck's defense of consent. Jackson testified that when the victim learned of the arrangement, "[s]he didn't say anything." He also testified that when Yeck instructed her to undress, "[s]he didn't stall, she didn't hesitate a bit." On cross-examination, Jackson repeatedly indicated that the victim chose to stay with Yeck after learning of the agreement. Jackson testified that the victim loaned him her automobile with the understanding that he would return for her later. Jackson's most damaging testimony merely indicated that the victim seemed apprehensive about going to Yeck's house and appeared "startled" when she learned of the agreement.

Also, during oral argument to this court, Yeck's new lawyer argued that because Jackson did not withdraw his not guilty plea until after the jury convicted Yeck on all four counts, a conflict existed. He argues that the jury indictment form showed Flanagan as the lawyer for both Yeck and Jackson with not guilty pleas entered for both. This, however, did not damage Yeck; it helped him. Because the jury indictment showed that Jackson pleaded not guilty to the charges, Jackson appeared to the jury to be a credible witness because it showed that, like Yeck, he also believed the victim consented.

The state correctly argues that Jackson's testimony supported Yeck's defense. Yeck admitted that he performed various sexual bondage acts with the victim, but with the victim's consent. Jackson testified that though the victim seemed apprehensive about going to Yeck's house, she never indicated that she wanted to leave. Consequently, Yeck's lawyer's performance was not adversely affected.

---

* A few cases have recognized that a subsequent case, *Baty v. Balkcom,* 661 F.2d 391, 396 (5th Cir.1981), appears to indicate that no adverse effect on counsel's performance need be demonstrated, but *Strickland* and later cases in this circuit affirm the standard set forth in *Cuyler.* See *Ruffin v. Kemp,* 767 F.2d 748, 751 (11th Cir.1985); *Stevenson v. Newsome,* 774 F.2d 1558, 1562 (11th Cir.1985); *United States v. Khoury,* 901 F.2d 948, 968 (11th Cir.1990).

We also find the other ineffective assistance of counsel claims to be meritless. Yeck alleges that he had ineffective assistance of counsel because of Flanagan's failure to do the following: (1) to reserve objections to the trial court's charge; (2) to object to allegedly highly prejudicial hearsay testimony; (3) to use demonstrative evidence to show the improbability of doing acts that the victim claims occurred; (4) to call Yeck's mother to testify; (5) to submit jury instructions; (6) to properly investigate the case and talk to witnesses; (7) to notify the court of intent to introduce the past sexual behavior of the victim; (8) to submit a requested charge on mistake of fact; and (9) to enumerate as error on appeal the trial court's failure to charge the jury on mistake of fact.

■ Ineffective assistance of counsel claims are reviewed under the standard enunciated in *Strickland*. Yeck must show that his lawyer performed deficiently and that prejudice resulted because of this deficient performance. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Generally, a strong presumption exists that the lawyer rendered adequate assistance. *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Supreme Court recognized, the judiciary must give deference when reviewing a lawyer's performance because it is easy to determine, after reviewing the case, that the lawyer acted unreasonably. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The district court found these ineffective assistance of counsel claims to be meritless. We agree. Because it is more plausible to dispose of Yeck's ineffective of assistance of counsel claims based on failure to show prejudice, we will first determine whether Yeck has demonstrated prejudice. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

■ Yeck lists nine alleged ineffective assistance of counsel claims, then summarily concludes that "Flanagan had a duty to [Yeck] to fully investigate his case and interview these witnesses," and that "Flanagan stated in the record that he was not trying to go into other sexual incidents and

that he was only discussing Mr. Yeck." Though Yeck listed numerous, bare allegations of deficient performance, he failed to demonstrate any prejudice. To show prejudice, Yeck must show a reasonable probability that but for Flanagan's deficient performance, he would not have been found guilty. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Yeck failed to satisfy the *Strickland* standard of prejudice.

The district court found that Yeck's allegations regarding the trial court's jury instructions had been procedurally defaulted. Though Flanagan objected to the admissibility of the sexual paraphernalia, he failed to request a limiting instruction on the admissibility of that evidence, failed to raise on appeal the trial court's failure to give a limiting instruction, and failed to request a charge to the jury on mistake of fact. Thus, these claims have been procedurally defaulted. To overcome a procedural default, Yeck must show the requisite cause and prejudice expressed in *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643–44, 91 L.Ed.2d 397 (1986). In *Murray*, the Court stated, "that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. Yeck has not established the requisite cause and prejudice to overcome the procedural default. Rather, Yeck argues the merits of his claims. Because Yeck has failed to show cause, the examination of the prejudice standard is obviated. *McClesky v. Zant*, — U.S. —, —, 111 S.Ct. 1454, 1475, 113 L.Ed.2d 517, 550 (1991). Yeck has not satisfied the *Murray* test; thus, we will not reach the merits of this issue.

For the foregoing reasons, the district court's denial of the petition for writ of habeas corpus is affirmed.

AFFIRMED.