Raleigh PORTER, Petitioner–Appellant,

v.

Harry K. SINGLETARY, Secretary Florida Department of Corrections, Respondent–Appellee.

No. 92–3210.

United States Court of Appeals, Eleventh Circuit.

Feb. 2, 1994.

Martin J. McClain, Chief Asst. Capital Collateral Representative, Gail E. Anderson, Capital Collateral Representative, Tallahassee, FL, for petitioner-appellant.

Robert J. Landry, Asst. Atty. Gen., Dept. of Legal Affairs, Tampa, FL, for respondent-appellee.

Before TJOFLAT, Chief Judge, ANDERSON and BLACK, Circuit Judges.

ANDERSON, Circuit Judge:

## PROCEDURAL HISTORY

Porter was indicted on two counts of premeditated murder and tried before a jury in a Florida circuit court. On November 30, 1978, the jury returned a general verdict, finding Porter guilty on both counts. Trial counsel for Porter were Widmeyer and Jacobs, with Jacobs conducting the penalty phase before the jury and Widmeyer representing Porter at sentencing before the judge. Following a sentencing hearing, the jury recommended that Porter receive life

imprisonment rather than the death penalty. On December 11, 1978, the trial judge overrode the jury's recommendation and sentenced Porter to death.

On June 4, 1981, the Florida Supreme Court affirmed Porter's conviction but vacated and remanded the case for resentencing. *Porter v. State*, 400 So.2d 5 (Fla.1981). The basis for the order to vacate Porter's sentence was a violation of *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), i.e., that Porter had not been allowed to rebut certain deposition testimony that the judge considered for sentencing purposes. The deposition was of Porter's former roommate Larry Schapp who asserted that Porter, prior to the murders, had laid out a plan for a future "B & E" in which he intended to kill his victims to allow him time to abscond with their automobile. At resentencing before the judge only, another Porter attorney, Woodard, presented evidence impeaching the previously unrebutted deposition testimony but presented little or no other evidence in mitigation. The trial judge again sentenced Porter to death.

On January 27, 1983, Porter's conviction and sentence were affirmed by the Florida Supreme Court. *Porter v. State*, 429 So.2d 293 (Fla.1983). The United States Supreme Court denied certiorari. 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). The governor of Florida denied clemency and signed a death warrant effective from October 22, 1985 to October 29, 1985. On October 22, 1985, Porter filed a motion in Florida circuit court to vacate judgment and sentence pursuant to Fla.R.Crim.P. 3.850. He also applied for a stay of execution. The 3.850 motion and stay were denied on October 22, 1985. The Florida circuit court did not hold an evidentiary hearing. On October 26, 1985, Porter's petition for federal habeas corpus was denied by the district court without benefit of an evidentiary hearing. That same day, this Court granted a stay of Porter's execution pending appeal.

On November 17, 1986, this Court remanded Porter's appeal for an evidentiary hearing to determine whether Porter had been denied effective assistance of counsel at sentencing and resentencing and whether trial counsel Widmeyer had operated under an actual conflict of interest. *Porter v. Wainwright*, 805 F.2d 930 (11th Cir.1986). Following an evidentiary hearing in October, 1988, the district court concluded that Porter received effective assistance of counsel at sentencing and resentencing and that there was no actual conflict of interest adversely affecting representation. *Porter v. Dugger*, 805 F.Supp. 941 (M.D.Fla.1992).

On appeal, Porter challenges the district court's holding that counsels' alleged failure to investigate, develop, and present mitigating evidence at sentencing and resentencing constituted an informed strategic decision. Likewise, Porter asserts the district court erred in concluding that trial counsel Widmeyer did not operate under an actual conflict of interest adversely affecting representation.

## DISCUSSION

### I. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Porter's first claim on appeal is that his representation at sentencing was constitutionally deficient because his attorneys at both sentencing hearings failed to adequately investigate and present evidence in mitigation of his crime.[1] Specifically, petitioner asserts that Widmeyer and Jacobs failed to introduce evidence of a difficult childhood and family relations as mitigation at the first sentencing. Petitioner claims that counsel possessed mitigating evidence regarding a difficult childhood, an abusive stepfather, illegitimacy, physical and sexual abuse, and juvenile incarceration, but failed to introduce this evidence. Petitioner likewise asserts that Woodard failed to research and introduce information regarding petitioner's family background as mitigation at the second sentencing. Specifically, Porter argues that Woodard failed to contact Porter's mother or to inquire into information contained in the

---

1. We discuss separately below Porter's claim that Widmeyer labored under a conflict of interest. See Part II, *infra*.

case file, including a psychiatric report indicating that petitioner's family life was "less than ideal, physically, financially and emotionally."

## A. *The First Sentencing*

At the first sentencing Porter was represented by attorneys Widmeyer and Jacobs. Jacobs took the lead at the sentencing phase before the jury. He presented only Porter's brief testimony. Porter testified that he had one prior conviction in which he had pled guilty to receiving stolen property. He further testified that he was twenty-two years old, was married, and had two children. Jacobs in closing argument to the jury vividly described the electrocution process.[2] The jury recommended a sentence of life imprisonment.

At the subsequent hearing before the judge to consider the jury's recommendation, Porter was represented only by Widmeyer. The trial judge rejected the jury's recommendation and sentenced Porter to death. The trial judge found that the statutory aggravating circumstances were that the murders were committed while Porter was engaged in the commission of a robbery for pecuniary gain, that the murders were committed for the purposes of avoiding or preventing a lawful arrest, and that the murders were especially heinous, atrocious and cruel. *See* Fla.Stat.Ann. § 921.141(5)(d), (e), (h) (West 1993). The trial judge concluded that these aggravating circumstances outweighed the scant mitigating evidence that Porter had advanced. In fact, the trial judge found no evidence which tended to mitigate the crime. The trial judge noted that the defendant's age at the time of the crime weighed against him in the eyes of the court because of the disparity between Porter's age and his physical strength and that of the victims. The trial judge also was not swayed by the fact that Porter was married and had two children because Porter was not supporting either his wife or his children; rather, he was living with another woman prior to and on the date of the murders.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), petitioner must establish that his counsel's performance at sentencing was seriously deficient and that he suffered prejudice as a result of such deficiency. 466 U.S. at 687, 104 S.Ct. at 2064. An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. *Thompson v. Wainwright,* 787 F.2d 1447, 1451 (11th Cir.1986). In evaluating whether counsel has discharged this duty to investigate, develop, and present mitigating evidence, we follow a three-part analysis. *First,* it must be determined whether a *reasonable investigation* should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a *tactical choice* by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. *Funchess v. Wainwright,* 772 F.2d 683, 689–90 (11th Cir.1985). If the choice was not tactical and the performance was deficient, then it must be determined whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Middleton v. Dugger,* 849 F.2d 491, 493 (11th Cir.1988).

Because "there is no per se rule that evidence of a criminal defendant's troubled childhood must always be presented as mitigating evidence in the penalty phase of a capital case," *Devier v. Zant,* 3 F.3d 1445, 1453 (11th Cir.1993), a reviewing court in assessing ineffectiveness claims should "address not what is prudent or appropriate, but only what is constitutionally compelled." *United States v. Cronic,* 466 U.S. 648, 665 n. 38, 104 S.Ct. 2039, 2050 n. 38, 80 L.Ed.2d 657 (1984). Thus, the relevant inquiry is whether petitioner's attorneys had " 'a reasonable basis for [their] strategic decision that an explanation of petitioner's history would not have minimized the risk of the death penalty.' "

---

**2.** The Florida Supreme Court disapproved such descriptions. *Porter v. State,* 429 So.2d 293, 296

(Fla.1983).

*Devier v. Zant,* 3 F.3d 1445, 1453 (11th Cir. 1993) (quoting *Burger v. Kemp,* 483 U.S. 776, 795, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). Claims of ineffective assistance of counsel must be reviewed from the perspective of counsel at the time. *Douglas v. Wainwright,* 714 F.2d 1532, 1554, *vacated and remanded,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874, *adhered to on remand,* 739 F.2d 531 (1984), *vacated and remanded on other grounds,* 468 U.S. 1212, 104 S.Ct. 3580, 82 L.Ed.2d 879 (1984).

■ After the evidentiary hearing, the district court found that Jacobs and Widmeyer made an informed tactical decision not to introduce evidence of Porter's family background that included an extensive criminal history. *Porter v. Dugger,* 805 F.Supp. 941, 946 (M.D.Fla.1992). Because adequacy of counsel is a mixed question of law and fact, we conduct a plenary review of the district court's conclusions, *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070, with findings of fact deemed correct unless clearly erroneous. *Bush v. Singletary,* 988 F.2d 1082, 1089 (11th Cir.1993). The question of whether a decision was a tactical one is a question of fact. *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992).

■ Ample evidence supports the district court's implicit finding of fact that counsel omitted presentation of family background to shield the jury from Porter's prior extensive criminal activity. Counsel learned from a background report prepared by the office investigator that Porter stated that he had done fourteen "B and E's" and three armed robberies and that he had juvenile problems. This negates petitioner's contention that his prior criminal activity was not very bad nor extensive. Although petitioner contends that the psychiatric report of Dr. Redcay, who examined Porter to determine the viability of the insanity defense, would demonstrate that petitioner is a victim of his environment, that report also noted Porter's continuous involvement with the law beginning at the age of twelve or thirteen and stated that Porter's

prognosis for rehabilitation was very poor. Jacobs testified that he feared that if the jury learned Dr. Redcay viewed Porter as one unlikely to become socialized through punishment, they might have recommended the death penalty. Likewise, Widmeyer testified that he did not want such matters to come to the jury's attention.

The family's testimony would also have elicited details of Porter's extensive juvenile record in addition to cataloguing his illegitimacy, alleged sexual abuse, and loving relationship with his sister. Despite prosecution attempts to introduce evidence of prior criminal activity during the penalty phase, the trial judge did not permit such evidence to be introduced. Thus, evidence at the penalty phase was limited to the one prior conviction to which Porter testified. The prosecution specifically sought to introduce the testimony of Detective David Lucas to whom Porter had confessed eighteen burglaries, including two violent crimes,[3] for which he had not been convicted. Porter admitted to the burglaries occurring in Ohio and Florida in exchange for a conviction for receiving stolen property. Widmeyer testified that testimony from the family of prior trouble with the law would have "opened the door." Jacobs stated that Porter had testified so briefly at the penalty phase to keep out extraneous criminal activities which counsel felt would hurt him. Additional witnesses would have made the judge reconsider his ruling and permit the prosecution to explore other criminal activities, according to Jacobs, who feared that Lucas' testimony would have opened up a "Pandora's Box of prior criminal activity."

At the subsequent sentencing hearing before the judge, there is no evidence to contradict the conclusion that counsel continued to pursue the same informed tactical decision. Although the judge had received some indication of the existence of prior criminal activity based upon the prosecution's efforts to introduce Lucas' testimony, the defense was not alerted that the judge would in fact rely upon such information. Also, counsel was unaware of the judge's utilization of the

**3.** At the evidentiary hearing, Lucas testified that Porter confessed to having a gun while burglarizing a residence and to a strong-armed robbery in which he struck an elderly lady as a struggle ensued.

Schapp deposition, as is illustrated by the *Gardner* remand to offer counsel an opportunity to rebut the deposition testimony. Further, the defense did not know to what extent family testimony would reveal further criminal activity of which the judge was unaware. Even if Widmeyer could have known that a substantial part of the damaging evidence concerning Porter's criminal activity was already known by the judge, he still could reasonably have made a decision based on the assumption that the judge would not consider evidence which was not either before the jury before sentencing or introduced as part of the record at the sentencing before the judge. Indeed, this is the basis of the *Gardner* holding. Accordingly, the district court appropriately found that Widmeyer pursued a reasonable tactical decision to pretermit family background evidence to avoid the introduction of damaging evidence of prior criminal activity.

Under all the circumstances, both with respect to the sentencing phase before the jury and with respect to the sentencing phase before the judge, we cannot conclude that the district court was clearly erroneous in finding that counsel made an informed tactical decision to exclude such evidence. The decision not to present such mitigating evidence was reasonably supported, fell within "the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, and is therefore entitled to deference by this court.[4] *See Lightbourne v. Dugger*, 829 F.2d 1012, 1025–26 (11th Cir.1987), *cert. denied*, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988).

## B. *The Second Sentencing*

■ After remand from the Florida Supreme Court, a resentencing hearing was held before the judge.[5] Porter was represented by attorney Woodard. Porter challenges Woodard's failure to adduce family background in mitigation. Although Woodard presented evidence impeaching the Schapp deposition and Porter's past employment as mitigating factors, he did not offer the testimony of family members. The district court found that counsel's decision not to introduce evidence of Porter's family background at resentencing constituted an informed strategic decision. *Porter v. Dugger*, 805 F.Supp. at 946. Porter contends that Woodard's failure to present mitigating character testimony could not have been strategic because Woodard had erroneously concluded that such evidence was inadmissible. Porter further asserts that even if Woodard was aware he could present mitigation, his failure to do so represents an example of counsel unreasonably relying on his client for legal advice.

Despite petitioner's contrary suggestion, the record indicates that Woodard was aware he could adduce mitigation. Woodard filed a motion to present character and background testimony from family members and was granted a two-week continuance to gather such evidence. Woodard testified that he was aware that non-statutory mitigation was admissible and had reviewed the file from the prior proceeding, consulting with both Jacobs and Widmeyer.

Aware that Porter had a prior criminal history, Woodard discussed with Porter the possibility of background and mitigating factors and the introduction of character witnesses. In this discussion, Woodard specifically questioned Porter regarding information obtainable from family members. Porter denied knowledge of anyone that would be helpful, with the exception of his mother, whom Woodard included on a witness list. Later, Porter instructed Woodard not to contact his mother because he did not want her to be there and because he did not feel she would be helpful. Woodard, while indicating general awareness of Porter's criminal back-

---

**4.** Because we conclude that counsel made an informed strategic decision, petitioner's claim does not satisfy the first prong of *Strickland*. Therefore, we do not reach the question of whether petitioner has met the prejudice prong of *Strickland*. To demonstrate prejudice, petitioner must show "that there is a reasonable probability that, but for counsels' unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

**5.** The remand did not require a new sentencing before the jury.

ground, could not recall Porter mentioning a juvenile record. Porter also failed to mention his illegitimacy or any alleged sexual abuse, according to Woodard. Like Widmeyer and Jacobs, Woodard stated that presenting family members who could have disclosed other criminal activity would not have been helpful.

Under all the circumstances, we cannot conclude that the district court was clearly erroneous in finding that Woodard made a reasonable tactical choice not to present family background evidence. Thus, the district court appropriately rejected Porter's claim.[6]

## II. CONFLICT OF INTEREST

■ Porter also urges the district court erred by not holding that he was denied effective assistance of counsel at trial because of an alleged actual conflict of interest on the part of trial counsel Widmeyer. While incarcerated, Porter allegedly confessed and boasted to Matha Thomas that he had committed the murders. Widmeyer, a public defender, had previously been appointed to represent Thomas in connection with a July 27, 1978, charge of uttering a forged instrument. Widmeyer undertook representation of Porter on August 22, 1978, at the time of his arrest. Without consulting Widmeyer, Thomas contacted the police concerning information obtained from Porter on August 25, 1978, and spoke with the state prosecutor Berry. Upon learning of Thomas' statement regarding Porter's alleged confession, Widmeyer informed the court and requested to withdraw as counsel for Thomas on September 1, 1978. On that same date, Thomas' bond was reduced pursuant to a stipulation entered into by Berry and Widmeyer. At this time Thomas' trial was scheduled to occur October 31, 1978, prior to Porter's trial. Upon motion of newly appointed counsel for Thomas, the court granted a continuance of Thomas' trial, setting it for a date subsequent to Porter's trial. At petitioner's trial, Widmeyer conducted the cross-examination

of Thomas but asked no questions concerning a possible deal between Thomas and the prosecutor. Subsequently, in January of 1979 the state nolle prossed the charges against Thomas without explanation.

In arguing a denial of ineffective assistance of counsel based upon an alleged conflict of interest, petitioner asserts an actual conflict existed because of Widmeyer's prior concurrent representation of Thomas and Porter. Petitioner maintains that Widmeyer failed to vigorously cross-examine Thomas regarding an alleged deal received from the prosecution in exchange for his testimony due to prior representation of Thomas.

■ To establish a viable Sixth Amendment claim premised upon an alleged conflict of interest, petitioner must satisfy the standard articulated by the Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), and "establish that an actual conflict of interest adversely affected his lawyer's performance." Once a defendant has satisfied both the actual conflict and adverse affect prongs of the *Cuyler* test, petitioner need not demonstrate prejudice, because in the case of an actual conflict, prejudice is presumed. *Danner v. United States,* 820 F.2d 1166, 1169 (11th Cir.1987). *See Barham v. United States,* 724 F.2d 1529, 1531 (11th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984). Anything less than an actual conflict "is insufficient to impugn a criminal conviction." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. Thus, a possible, speculative or merely hypothetical conflict does not suffice. *Lightbourne v. Dugger,* 829 F.2d 1012, 1023 (11th Cir.1987). Instead, petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party. *See Oliver v. Wainwright,* 782 F.2d 1521, 1524–25 (11th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). This requires petitioner to make

---

**6.** Because of our determination that petitioner has failed to demonstrate the performance prong of *Strickland,* we decline to reach the prejudice prong. We do note that the Florida Supreme Court rejected the notion that introduction of family background evidence would have altered the balance of aggravating and mitigating factors, concluding: "It is at least as likely that introducing this material would have damaged Porter as that it would have helped him." *Porter v. State,* 478 So.2d 33, 35 (Fla.1985).

a factual showing of inconsistent interests and "demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir.1987). *See Barham v. United States*, 724 F.2d 1529, 1532 (11th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984). Absent such a demonstration, the conflict remains hypothetical and cannot form a basis for relief. *Stevenson v. Newsome*, 774 F.2d 1558, 1561–62 (11th Cir.1985). Questions involving conflicts of interest are mixed determinations of law and fact subject to *de novo* review. *Yeck v. Goodwin*, 985 F.2d 538, 540 (11th Cir.1993); *Oliver v. Wainwright*, 782 F.2d 1521, 1524 (11th Cir.1986). *See Baty v. Balkcom*, 661 F.2d 391, 394 n. 5 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).[7]

■ Petitioner has articulated a potential conflict of interest. An attorney who cross-examines a former client inherently encounters divided loyalties. *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir.1987); *Stephens v. United States*, 595 F.2d 1066, 1070 (5th Cir.1979). The Supreme Court has recognized that the harm caused by representing conflicting interests is difficult to measure because the harm "is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Duncan v. State*, 881 F.2d 1013, 1016 (11th Cir.1989) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)).

Petitioner has raised a *potential* conflict of interest, but has failed to prove an *actual* conflict of interest. Although Porter was given an opportunity at an evidentiary hearing to prove that the *potential* conflict of interest was, in fact, an *actual* conflict of

interest, he failed to adduce such proof. At the evidentiary hearing held in the district court on remand from this court, Widmeyer testified that he did not refrain from asking Thomas any questions on cross-examination because of his prior representation of Thomas. In addition, Thomas testified that he was not promised anything for testifying against Porter, including special or better treatment. In fact, Thomas indicated that he could not recall any conversations with Widmeyer concerning Porter's case.

The district court implicitly credited the foregoing testimony of both Widmeyer and Thomas. *Porter v. Dugger*, 805 F.Supp. at 947. The district court concluded that there was no actual conflict of interest, and rejected Porter's claim.

After careful consideration of all the circumstances, we cannot conclude that the district court erred in rejecting Porter's conflict of interest claim. Porter failed to adduce evidence to prove an actual conflict of interest. The evidence credited by the district court establishes that Widmeyer did not refrain from asking Thomas any questions because of his prior representation of Thomas, and that Thomas was not in fact promised anything for testifying against Porter. Moreover, in light of Thomas' explicit testimony that he was promised nothing, Widmeyer apparently decided for strategic reasons not to cross-examine Thomas about a deal, but rather to argue the inference of a deal in closing to the jury. The transcript of the closing reveals that Widmeyer did make such an argument.

For the foregoing reasons, we cannot conclude that the district court erred in rejecting Porter's conflict of interest claim.[8]

## III. THE REMAINING CLAIMS

Porter raises four other claims on appeal. Those claims are (1) that the jury override

---

**7.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), we adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

**8.** Because of our determination that no actual conflict existed, we do not reach the question of adverse effect upon representation. Moreover, we note that Porter did not argue in the district

court, and did not argue in brief on appeal, that Widmeyer himself offered Thomas' testimony against Porter to the prosecutor in exchange for the bond reduction or any other kind of leniency for Thomas. No such argument was made, nor does the evidence indicate Widmeyer's participation in any such deal.

resulted in an arbitrary, capricious and unreliably imposed sentence of death in violation of *Tedder v. State,* 322 So.2d 908 (Fla.1975); (2) that the statutory aggravating factor of Fla.Stat.Ann. § 921.141(5)(h) (that the crime was especially heinous, atrocious or cruel) is facially vague and overbroad, with neither the sentencing court nor the Florida Supreme Court adopting a constitutionally adequate narrowing construction in contravention of *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); (3) that the judge in overriding the jury improperly relied upon non-statutory aggravating circumstances of victim impact, with counsel's failure to object constituting ineffective assistance of counsel; and (4) that failure to adequately evaluate mitigation evidence at sentencing, resentencing, on direct appeal, and at post-conviction review stages violated *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

With respect to claims (1) and (2), this Court addressed and resolved those claims on Porter's prior appeal in *Porter v. Wainwright,* 805 F.2d 930, 942–43 (11th Cir.1986). As for Porter's claim that the judge improperly relied upon non-statutory aggravating factors, that claim is foreclosed by *Payne v. Tennessee,* —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), which overruled *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and its preclusion of victim impact evidence at the sentencing phase of a capital trial. Finally, Porter's claim regarding a failure to assess mitigation in contravention of *Parker v. Dugger* is without merit and warrants no discussion.

### CONCLUSION

For the foregoing reasons, we conclude that Porter has failed to prove that counsel's failure to investigate and present mitigating evidence at sentencing and resentencing constituted ineffective assistance of counsel. While Porter has adduced evidence sufficient to suggest a potential conflict, he has failed to demonstrate that an actual conflict of interest existed at trial. As discussed above, all of Porter's other claims are either barred or without merit. Accordingly, the judgment of the district court is

AFFIRMED.